1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE HONORABLE RICARDO S. MARTINEZ

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| NW MONITORING LLC, a Delaware limited liability company, | Case No.  3:20-cv-05572-RSM |
| Plaintiff, | **DEFENDANTS JEFFERY** |
| v. | **PARKINSON, 4319 CONSULTING,** |
| | **INC., AND MARITAL COMMUNITY** |
| SUSAN L. HOLLANDER, et al. | **OF JEFFERY PARKINSON'S** |
| | **MOTION TO DISMISS COMPLAINT** |
| Defendants. | |
| | **ORAL ARGUMENT REQUESTED** |
| | **NOTE ON MOTION CALENDAR:** |
| | **September 11, 2020** |

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM

149110316.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ..................................................................................................1

III. ARGUMENT .....................................................................................................3

    A.     Legal Standard ...........................................................................3

    B.     Plaintiff's Trade Secret Claims Fail as a Matter of Law ...................................3

         1.     Plaintiff Has Not Identified a Trade Secret.............................4

         2.     Plaintiff Has Not Alleged Misappropriation...........................6

    C.     Plaintiff's Computer Fraud and Abuse Act Claims Fail as a Matter of Law.....7

    D.     The RICO Claims Fail as a Matter of Law ...................................................9

    E.     Plaintiff's Tortious Interference Claim Fails as a Matter of Law ...................11

         1.     The Phoenix and The Neuromonitoring Group Contractual Relations ...................................................................................12

         2.     Spine-Tek and Neuro Alert Business Expectancies............................13

         3.     Dr. Hollander and Ms. Wolfe's Contractual Relations.......................14

    F.     Plaintiff's Allegations Regarding Dr. Hollander and Ms. Wolfe's Alleged Breaches of Loyalty Do Not State a Claim Regarding 4319 Consulting or Dr. Parkinson...............................................................................................14

    G.     Plaintiff's Civil Conspiracy Claims Fail as a Matter of Law.........................16

IV. CONCLUSION...............................................................................................17

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM

149110316.2

i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*All Star Gas, Inc., of Washington v. Bechard,*
  100 Wash. App. 732 (2000)................................................................16

*Amazon.com, Inc. v. Powers,*
  No. C12–1911RAJ, 2012 WL 6726538 (W.D. Wash. Dec. 27, 2012)....................4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................3

*Banks v. PNC Bank,*
  No. C06-1109JLR, 2007 WL 2363064 (W.D. Wash. Aug. 14, 2007) .................12

*Birkenwald Distrib. Co. v. Heublein, Inc.,*
  55 Wash. App. 1 (1989)................................................................13, 14

*Bombardier Inc. v. Mitsubishi Aircraft Corp.,*
  383 F. Supp. 3d 1169 (W.D. Wash. 2019)................................................3

*Chavez v. United States,*
  683 F.3d 1102 (9th Cir. 2012) ................................................................12, 15, 16

*ChemStation of Seattle, LLC v. Donahoe,*
  No. 77030-6-I, 2018 WL 3625781, 4 Wash. App. 2d 1061 (July 30, 2018)
  (unpublished) ................................................................4

*Commodore v. Univ. Mech. Contractors, Inc.,*
  120 Wash.2d 120 (1992) *amended* (Nov. 18, 1992)................................11

*Digital Mentor, Inc. v. Ovivo USA, LLC,*
  No. C17-1935-RAJ, 2018 WL 6724765 (W.D. Wash. Dec. 21, 2018) ..............4, 6

*Domain Name Comm'n Ltd. v. DomainTools, LLC,*
  No. C18-0874RSL, 2020 WL 1467337 (W.D. Wash. Mar. 26, 2020)...........7, 8, 9

*Eclectic Properties E., LLC v. Marcus & Millichap Co.,*
  751 F.3d 990 (9th Cir. 2014) ................................................................10

*Ed Nowogroski Ins., Inc. v. Rucker,*
  137 Wash. 2d 427 (1999)................................................................4

*Ferrie v. Woodford Research, LLC,*
  No. 3:19-CV-05798-RBL, 2020 WL 3971343 (W.D. Wash. July 14, 2020)........16

*Gossen v. JPMorgan Chase Bank,*
  819 F. Supp. 2d 1162 (W.D. Wash. 2011)................................................17

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM
149110316.2

ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)...............................................................................10

*Haglund v. Sawant*,
   No. C17-1614-MJP, 2018 WL 2216154 (W.D. Wash. May 15, 2018), aff'd, 781
   F. App'x 586 (9th Cir. 2019) ...............................................................12

*Harris v. Sears Holding Corp.*,
   No. 2:10-CV-01339-MJP, 2011 WL 219669 (W.D. Wash. Jan. 24, 2011)..........13

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ................................................9, 10, 11

*Hunter v. Ferebauer*,
   980 F. Supp. 2d 1251 (E.D. Wash. 2013) ...........................................16

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) .............................................................5

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
   No. 2:08-MD-1919 MJP, 2010 WL 1734848 (W.D. Wash. Apr. 28, 2010) .........15

*Kazia Digo, Inc. v. Smart Circle Int'l, LLC*,
   No. C11-544RSL, 2012 WL 836233 (W.D. Wash. Mar. 12, 2012) ....................12

*Khalid v. Microsoft Corp.*,
   No. C19-130-RSM, 2020 WL 1674123 (W.D. Wash. Apr. 6, 2020) .....................9

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) .............................................................7

*McCallum v. Allstate Prop & Cas. Ins. Co.*,
   149 Wash. App. 412, 204 P.3d 944 (2009)...........................................4

*Montgomery v. City of Ardmore*,
   365 F.3d 926 (10th Cir. 2004) ...........................................................16

*Multifab, Inc., v. Jon Zweiger, et al.*,
   No. C19-6164 BHS, 2020 WL 2614736 (W.D. Wash. May 22, 2020)..............4, 5

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*,
   No. CV-10-034-EFS, 2010 WL 2854247 (E.D. Wash. July 19, 2010) .................8

*Nat'l City Bank, N.A. v. Republic Mortg. Home Loans, LLC*,
   No. C09-1550RSL, 2010 WL 959925 (W.D. Wash. Mar. 12, 2010) ....................8

*Organo Gold Int'l, Inc. v. Ventura*,
   No. C16-487RAJ, 2016 WL 1756636 (W.D. Wash. May 3, 2016)................13, 14

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM

iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

149110316.2

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................................3

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ..............................................................................10

*Swartz v. Presidio Advisory Grp.*,
   No. C03-1252MJP, 2008 WL 2545054 (W.D. Wash. June 24, 2008) .................15

*Walsh v. Microsoft Corp.*,
   63 F. Supp. 3d 1312 (W.D. Wash. 2014) ...........................................................7, 8

**STATUTES**

18 U.S.C. § 1030 ...........................................................................................7, 8, 11

18 U.S.C. § 1343 .....................................................................................................9

18 U.S.C. § 1832 ..................................................................................................3, 9

18 U.S.C. § 1839(3) .............................................................................................4, 5

18 U.S.C. § 1839(5) .................................................................................................4

18 U.S.C. § 1961 ..........................................................................................9, 10, 11

18 U.S.C. § 1961(1) .................................................................................................9

RCW 19.108.010 ..................................................................................................3, 4

RCW 19.108.010(2) .................................................................................................4

RCW 19.108.010(4) .............................................................................................4, 5

**OTHER AUTHORITIES**

Fed. Civ. P. Rule 9(b) ...........................................................................................10

Fed. R. Civ. P. 11(a) ................................................................................................3

Fed. R. Civ. P. 11(b) ................................................................................................3

Fed. R. Civ. P. 11(b)(3) ...........................................................................................8

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 3

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM

iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

149110316.2

1

## I.    INTRODUCTION

2

3      Plaintiff NW Monitoring ("Plaintiff") has sued two of its former employees, Defendants

4   Susan Hollander and Charlene Wolfe, as well as Dr. Hollander's new employer 4319 Consulting

and its President, Jeffrey Parkinson (collectively, the "Defendants").

5      Given the lack of actionable conduct by the Defendants, Plaintiff's plan is apparently to

6   throw every conceivable claim at the wall and hope something sticks.  Indeed, Plaintiff has

7   stretched a small handful of allegations to create its 51-page Complaint, encompassing 22 claims.

8   However, the limited and innocuous facts alleged (and repeated *ad nauseum*) by Plaintiff simply

9   cannot support its weighty Complaint, and demonstrate why the claims fail as a matter of law.

10      Plaintiff's claims regarding 4319 Consulting and Dr. Parkinson are especially frail.  4319

11   Consulting and Dr. Parkinson's involvement in this case extends no further than a business hiring

12   a new employee.  Indeed, the Complaint contains nearly no facts regarding direct actions taken

13   4319 Consulting or Dr. Parkinson.  To the contrary, Plaintiff's allegations rest on speculation and

14   conclusions—mere "information and belief."  Primarily, Plaintiff repeatedly includes a laundry

15   list of buzz words, alleging that 4319 Consulting and Dr. Parkinson "aided, assisted, abetted,

16   advised, encouraged, or counseled" the actions of the other defendants.  Plaintiff repeats that buzz

17   word laundry list *a dozen times* in the Complaint.  But glaringly absent from any iteration of that

18   list is *a single fact* to support this allegation.  Similar problems plague the entire Complaint.

19      These deficiencies warrant dismissal of Plaintiff's claims against Dr. Parkinson and 4319

20   Consulting.

21

## II.    BACKGROUND[1]

22      Plaintiff provides intraoperative neuro monitoring and oversight services.  Complaint ¶ 5.1.

23   Dr. Hollander and Ms. Wolfe are former employees of Plaintiff.  *Id.* ¶¶ 5.4-5.5.  Dr. Hollander, the

24   former Chief Medical Officer for Plaintiff and direct supervisor of Ms. Wolfe, provided her notice

25   of resignation to Plaintiff on January 9, 2020 with her resignation to be effective on April 8, 2020.

26

27   _____

[1] Dr. Parkinson and 4319 Consulting deny Plaintiff's allegations in the Complaint, but recite some
here and accepts such allegations as true solely for the motion to dismiss standard under Federal
28   Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

MOTION TO DISMISS COMPLAINT                          1
Case No.  3:20-cv-05572-RSM

149110316.2

1  *Id.* ¶¶5.4, 12.12.  When she provided her notice of resignation, Dr. Hollander also informed

2  Plaintiff that she would begin working at 4319 Consulting after her resignation was effective.  *Id.*

3  ¶ 12.12.  Dr. Parkinson is the President of 4319 Consulting.  *Id.* ¶ 4.3.

4           Outside of these background facts, Plaintiff asserts ***twenty-two*** claims based on less than a

5  dozen factual allegations, copying and pasting those allegations repeatedly throughout the

6  Complaint.  These allegations are:

7      •  In February of 2020, Dr. Hollander e-mailed two companies, copying Dr. Parkinson,

8         to gauge their interest in becoming clients of 4319 Consulting once Dr. Hollander

9         began working at 4319 Consulting.  *Id.* ¶ 20.5(d).  Plaintiff does not allege that

10        Dr. Parkinson participated in this conversation.

11     •  In March 2020, Dr. Hollander and Dr. Parkinson e-mailed two other companies, The

12        Neuromonitoring Group and The Phoenix, to confirm Dr. Hollander's forthcoming

13        employment with 4319 Consulting and the companies' relationship with 4319

14        Consulting going forward.  *Id.* ¶ 20.5(f).

15     •  While employed by Plaintiff, Ms. Wolfe performed some part-time work for 4319

16        Consulting in the form of providing credentialing services for Dr. Hollander.  *Id.* ¶

17        21.5(b).

18     •  Ms. Wolfe used her work e-mail account to send credentialing and license renewal

19        information to her personal e-mail account.  *Id.* ¶ 6.2-6.4.

20     •  Dr. Hollander, Dr. Parkinson and 4319 Consulting accessed Plaintiff's USMON

21        account and misappropriated trade secrets.  *Id.* ¶ 6.7.  Notably, Plaintiff does not

22        identify when or how Dr. Parkinson or 4319 Consulting accessed the program (or

23        even could have accessed it), or what trade secrets were allegedly misappropriated

24        by any Defendant.  In other words, Plaintiff vaguely *alleges* trade secrets were

25        misappropriated, without saying *what* was misappropriated, or bothering to explain

26        *why* or *how* the information constitutes a trade secret in the first place.

27         Finally, Plaintiff claims that Dr. Hollander, Ms. Wolfe, Dr. Parkinson and 4319 Consulting

28  jointly participated in each of the foregoing allegations.  But, consistent with the Complaint's

MOTION TO DISMISS COMPLAINT                    2                    **Perkins Coie LLP**
Case No. 3:20-cv-05572-RSM                                    1201 Third Avenue, Suite 4900
                                                              Seattle, WA 98101-3099
149110316.2                                                   Phone: 206.359.8000

overall vagueness, Plaintiff fails to provide *any* specific facts explaining *how* each Defendant participated.  Tellingly, because it lacks any supporting evidence, Plaintiff uses a shotgun of buzzwords in place of factual allegations claiming that "upon information and belief" each of the Defendants "directly or indirectly aided, assisted, abetted, advised, encouraged, or counseled" the other defendants.  *See e.g., id.* at ¶ 6.5, 6.9, 8.5.

Somehow, built nearly entirely on these innocuous facts, Plaintiff squeezed out a 51-page complaint consisting of 22 claims.  These claims were not carefully curated.  Instead, they overreached and alleged any claim they could think of, regardless of whether they had factual support.[2]

## III.  ARGUMENT[3]

### A.  Legal Standard

Rule 12(b)(6) provides for dismissal "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1177–78 (W.D. Wash. 2019).  A complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court accepts well-pled facts as true, it need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 556 U.S. at 679.  A complaint that pleads facts that are "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal citation and quotation omitted).  The "mere possibility of misconduct" does not entitle the pleader to relief.  *Id.* at 679.

### B.  Plaintiff's Trade Secret Claims Fail as a Matter of Law

Plaintiff asserts trade secret misappropriation under both 18 U.S.C. § 1832, Defend Trade

---

[2] Defendants have already provided notice that Plaintiffs' claims appear to violate Fed. R. Civ. P. 11(a).  Defendants expressly reserve the right to seek sanctions under Fed. R. Civ. P. 11(b).

[3] The Complaint also names "the marital community comprised of Jeffery Parkinson and Jane Doe Parkinson."  Because the claims against Dr. Parkinson should be dismissed, so too should the claims against his community property.

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM
149110316.2

3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

Secrets Act (DTSA) and the Washington Uniform Trade Secrets Act ("WUTSA"), which codifies the basic principles of common law trade secret protection in Washington. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 438 (1999); Complaint ¶¶ 6.1-6.10; 14.1-14.8. Both the DTSA and WUTSA define a trade secret as information with independent economic value that is not generally known, and is the subject of reasonable efforts to maintain its secrecy. *See* RCW 19.108.010(4); 18 U.S.C. § 1839(3); *see also Multifab, Inc., v. Jon Zweiger, et al.,* No. C19-6164 BHS, 2020 WL 2614736, at *3 (W.D. Wash. May 22, 2020) (WUTSA and DTSA "define[] trade secret[s] similarly"). Misappropriation is the improper acquisition, disclosure, or use of such information. RCW 19.108.010(2); 18 U.S.C. § 1839(5).

The Complaint is vague as to what information, if any, was allegedly misappropriated by any of the Defendants. Worse, it is completely devoid of allegations demonstrating that any such information constitutes trade secrets or that the information was acquired or used by 4319 Consulting or Dr. Parkinson. Instead, Plaintiff speculates that 4319 Consulting and Dr. Parkinson "directly *or* indirectly aided, assisted, abetted, advised, encouraged, *or* counseled" the other defendants in misappropriating trade secrets. Complaint ¶¶ 6.5, 6.8, 14.7 (emphasis added). Plaintiff bases this lawsuit on its "belief" that 4319 Consulting and Dr. Parkinson did something that Plaintiff can neither identify nor allege. This speculation is insufficient, and Plaintiff's trade secret claim should be dismissed.

### 1.    Plaintiff Has Not Identified a Trade Secret

"Part of sufficiently stating a claim for trade secret misappropriation is sufficiently identifying the alleged trade secrets and showing that they exist." *Digital Mentor, Inc. v. Ovivo USA, LLC*, No. C17-1935-RAJ, 2018 WL 6724765, at *7 (W.D. Wash. Dec. 21, 2018).[4] Courts require a plaintiff to define trade secrets "with sufficient particularity to separate them from

---

[4] *Accord Amazon.com, Inc. v. Powers*, No. C12–1911RAJ, 2012 WL 6726538, at *6 (W.D. Wash. Dec. 27, 2012) (requiring plaintiff to define alleged trade secret with "sufficient specificity"); *McCallum v. Allstate Prop & Cas. Ins. Co.*, 149 Wash. App. 412, 426, 204 P.3d 944 (2009) (plaintiff must provide "concrete examples to illustrate how . . . [the information was] materially different from those of its competitors"; *ChemStation of Seattle, LLC v. Donahoe*, No. 77030-6-I, 2018 WL 3625781 at *6, 4 Wash. 2d 1061 (July 30, 2018) (requiring plaintiff to specifically identify trade secrets to obtain a preliminary injunction) (unpublished).

1   matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in

2   the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (citation

3   omitted).  In addition to sufficiently identifying what information allegedly constitutes a trade

4   secret, the plaintiff must also sufficiently plead facts establishing that such information constitutes

5   a trade secret.  *Multifab*, 2020 WL 2614736 at *3 (dismissing trade secret claims where

6   information was readily ascertainable by proper means and thus not a trade secret).  Plaintiff's

7   complaint is too general to satisfy even basic pleading standards.

8         Plaintiff's broad description of what information Dr. Hollander accessed through its

9   USMON account—consisting of "*any and all information*" contained there—does not identify a

10   trade secret.  Complaint ¶¶ 6.6, 14.5 (emphasis added).  Plaintiffs description of the information

11   contained on its USMON account—"electronic medical records and customer pricing information,

12   *among other trade secrets*"— is equally vague.  *Id.* (emphasis added).  Most relevant here,

13   Plaintiff does not even attempt to identify which trade secrets 4319 Consulting and Dr. Parkinson

14   misappropriated; instead it alleges that they "misappropriated NW Monitoring's trade secrets

15   maintained [on the USMON account]."  *Id.* ¶¶ 6.7, 14.6.  This amounts to no more than

16   speculation that 4319 Consulting and Dr. Parkinson misappropriated *something*.  This deficiency

17   alone is sufficient to dismiss the claims.

18         Plaintiff also fails to allege that the information on the USMON account satisfies any of the

19   elements necessary to qualify as a trade secret.  Plaintiff states no more than that the information

20   "relate[s] to service in interstate commerce that NW Monitoring provides[.]"  *Id.* ¶ 6.8.  This is far

21   from sufficient to plead the existence of a trade secret.  *See* RCW 19.108.010(4) (trade secrets are

22   information (1) with independent economic value (2) that is not generally known, and (3) is the

23   subject of reasonable efforts to maintain its secrecy); 18 U.S.C. § 1839(3) (same).

24         These same deficiencies plague Plaintiff's allegations regarding the information Ms. Wolfe

25   allegedly emailed to herself.  Plaintiff describes this information as "*all of NW Monitoring's trade*

26   *secret information* related to hospital credentialing and physician license renewals."  Complaint ¶¶

27   6.4, 14.3 (emphasis added).  Plaintiff again specifies only that this information "relate[s] to

28   services in interstate commerce that NW Monitoring provides[.]"  *Id.* ¶ 6.4.  Once again, vaguely

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

1 referencing "all of NW Monitoring's trade secret information" fails to identify any specific trade

2 secret.  Nor does it show that whatever information is being referenced qualifies as a trade secret.

3 Because Plaintiff failed to identify what trade secrets were allegedly misappropriated, or to

4 sufficiently allege that a trade secrets exists, its claims should be dismissed.  *Digital Mentor, Inc.*,

5 2018 WL 6724765 at *7.

6 **2.    Plaintiff Has Not Alleged Misappropriation**

7 Plaintiff's trade secret claim should also be dismissed because the Complaint fails to allege

8 that 4319 Consulting or Dr. Parkinson misappropriated any information.  Plaintiff's

9 misappropriation claims rely solely on the alleged misappropriation of (1) information Ms. Wolfe

10 allegedly emailed to herself and (2) information allegedly accessed by Dr. Hollander,

11 Dr. Parkinson and 4319 Consulting found on Plaintiff's USMON account.  Complaint ¶¶ 6.1-6.10;

12 14.1-14.8.  Plaintiff does not sufficiently allege that Dr. Parkinson or 4319 Consulting accessed,

13 acquired or used either sets of information.

14 Regarding the first, Plaintiff merely repeats its copy-pasted allegation that 4319 Consulting

15 and Dr. Parkinson "directly or indirectly aided, assisted, abetted, advised, encouraged, or

16 counseled" Ms. Wolfe in connection with her alleged misappropriation.  *Id.* ¶ 6.5; 14.4.  There are

17 no factual allegations regarding *how* 4319 Consulting and Dr. Parkinson effectuated this aid,

18 assistance, abetting, advice, encouragement or counsel.  Nor does Plaintiff allege that 4319

19 Consulting or Dr. Parkinson acquired, accessed, or used the information Ms. Wolfe allegedly

20 misappropriated.

21 Regarding the latter, while Plaintiff speculates that Dr. Parkinson and 4319 Consulting

22 somehow accessed Plaintiff's USMON account, it does not allege that Dr. Parkinson or 4319

23 Consulting accessed, acquired or used any specific information—nor a specific trade secret—on

24 the USMON account.  *Id.* ¶ 6.7, 14.6.  Notably, the Complaint is also missing any allegations

25 regarding how Dr. Parkinson or 4319 Consulting could have accessed or did access Plaintiff's

26 account.

27 Because the Amended Complaint does not identify the alleged trade secrets at issue,

28 sufficiently plead that any trade secrets exist, nor allege that Dr. Parkinson or 4319 Consulting

MOTION TO DISMISS COMPLAINT                                        6
Case No. 3:20-cv-05572-RSM
149110316.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

1  misappropriated any such trade secrets, Plaintiff's trade secret misappropriation claims should be

2  dismissed.

3  **C.    Plaintiff's Computer Fraud and Abuse Act Claims Fail as a Matter of Law**

4  Count Five alleges that Ms. Wolfe violated the Computer Fraud and Abuse Act (CFAA)

5  by e-mailing herself hospital credentialing and physician license renewal information, and Count

6  Three alleges that Dr. Hollander, Dr. Parkinson and 4319 Consulting violated the CFAA by

7  accessing Plaintiff's USMON account.  Complaint ¶¶ 8.1-8.7; 10.1-10.6.  Both claims fail as a

8  matter of law, and should be dismissed.

9  The CFAA claims are facially defective:  Plaintiff does not identify *which sections* of the

10  CFAA it alleges Defendants violated.  Broadly referencing an entire statute is a good sign that a

11  claim has no factual support, and is not legally viable.

12  Moreover, the allegations Plaintiff does provide are deficient regardless of which section it

13  brings its claims under.  To assert a CFAA claim, Plaintiff must sufficiently plead allegations that

14  Defendants (1) accessed a protected computer and (2) such access was without authorization or

15  exceeded authorized access.  18 U.S.C. § 1030.  Additionally, Plaintiff must provide allegations

16  that "give rise to a plausible inference that defendant's alleged violations of the CFAA . . . caused

17  damage or loss in excess of $5,000."  *Domain Name Comm'n Ltd. v. DomainTools, LLC*, No.

18  C18-0874RSL, 2020 WL 1467337, at *4 (W.D. Wash. Mar. 26, 2020); *Walsh v. Microsoft Corp.*,

19  63 F. Supp. 3d 1312, 1320 (W.D. Wash. 2014).  Both CFAA claims fail to plead these

20  requirements.

21  First, Plaintiff does not claim that Ms. Wolfe's access to her work e-mail account or to the

22  credentialing and physician license renewal information was unauthorized.  Instead, Plaintiff's

23  claim focuses on what Ms. Wolfe allegedly *did* with the information, namely using her work

24  e-mail account to send documents to her personal e-mail account.  Complaint ¶ 10.2.  But the

25  CFAA does not cover circumstances where a defendant *used* information without authorization; it

26  only applies where the defendant *accessed* the information without authorization.

27  This is not an academic point; it's a *dispositive* distinction which shows why these claims

28  must be dismissed with prejudice.  Other courts considering the same issue have reached the same

MOTION TO DISMISS COMPLAINT

Case No. 3:20-cv-05572-RSM

149110316.2

7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

result:  when a defendant uses its work e-mail (for which the defendant *had* access) to e-mail documents to a personal account, there is no CFAA violation.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (no violation of CFAA where defendant used his work computer to e-mail himself documents without authorization because defendant was authorized to use the computer); *Nat'l City Bank, N.A. v. Republic Mortg. Home Loans, LLC*, No. C09-1550RSL, 2010 WL 959925, at *3 (W.D. Wash. Mar. 12, 2010) ("A CFAA violation occurs only when an employee *accesses* information that was not within the scope of his or her authorization.") (emphasis added); *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 WL 2854247, at *4 (E.D. Wash. July 19, 2010) ("an employee who is allowed to use the employer's computer for work never accesses it without authorization for the purposes of CFAA, even if the employee does so to further personal interests").

Moreover, and key to this motion, Plaintiff does not allege *a single fact* connecting Dr. Parkinson or 4319 Consulting to Ms. Wolfe's alleged CFAA violation.  Plaintiff's mere conclusory allegation—which it repeats verbatim for almost every claim—that Dr. Parkinson and 4319 Consulting somehow aided Ms. Wolfe is insufficient to state a claim against Dr. Parkinson and 4319 Consulting.[5]

Second, the Complaint is devoid of any explanation as to how either of the alleged CFAA violations caused losses in excess of $5,000.  Plaintiff supports both claims by merely repeating the same statement, unadorned of facts, that "[Plaintiff] suffered damages and/or loss … aggregating at least $5,000 in value" as a result of the alleged actions.  Complaint ¶ 8.6; 10.5. Courts routinely dismiss claims containing only such cursory conclusions.  *See e.g., Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1320 (W.D. Wash. 2014) (dismissing CFAA claim where plaintiff "state[d] cursorily that "[i]n the instant case the aggregate claims will easily exceed $5,000.00..." but provide[d] no information on how calculations [could] be made that result in

---

[5] That Plaintiff would use such repetitive, vague, and formulaic buzzwords to manufacture liability for the 4319 Defendants illustrates how the Complaint likely violates Fed. R. Civ. P. 11(b)(3), which requires that all "factual contentions have evidentiary support."

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

1  more than $5,000 in damages."); *Domain Name Comm'n Ltd. v. DomainTools*, LLC, No. C18-

2  0874RSL, 2020 WL 1467337, at *4 (W.D. Wash. Mar. 26, 2020).

3      Because Plaintiff failed to allege that any access was unauthorized and because its

4  allegations failed to provide information as to how losses from such access exceeded $5,000, both

5  claims should be dismissed with prejudice.  *Id.*

6  **D.      The RICO Claims Fail as a Matter of Law**

7      In a severe overreach, Plaintiff throws in claims for violations of RICO and civil

8  conspiracy to violate RICO.  To establish a RICO violation, Plaintiff must plead (1) conduct (2) of

9  an enterprise (3) through a pattern (4) of racketeering activity.  *Howard v. Am. Online Inc*., 208

10  F.3d 741, 746 (9th Cir. 2000).  Plaintiff fails to allege at least three of these requirements.

11      First, Plaintiff fails to describe the alleged "enterprise."  To plead the existence of an

12  enterprise, a plaintiff must allege "(1) a purpose; (2) relationships among those associated with the

13  enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's

14  purpose."  *Khalid v. Microsoft Corp*., No. C19-130-RSM, 2020 WL 1674123, at *7 (W.D. Wash.

15  Apr. 6, 2020).  Plaintiff does not plead at least the relationship or longevity elements.

16      To plead the enterprise relationship element, Plaintiff must plead "specific facts as to [the

17  enterprise's] organization, such as how one [entity] may control, direct, or manage the other[.]"

18  *Id.* at *8.  The Complaint is devoid of any explanation of the relationship between the members of

19  the alleged enterprise.  *See generally,* Complaint ¶¶ 12.1-12.17.  The Complaint is also bereft of

20  details as to when the supposed "enterprise" began, ended or how it connects to the alleged

21  predicate acts.  *Id.*  This information is required to establish the longevity element.

22      Both the relationship and longevity deficiencies are fatal to Plaintiff's claim.  *See Khalid*,

23  2020 WL 1674123 at *7 (dismissing claim of RICO violation where plaintiff failed to allege

24  sufficient information to describe the enterprise).

25      Second, Plaintiff does not sufficiently allege any racketeering activity on the part of

26  Defendants.[6]  While Plaintiff asserts that a "pattern of racketeering activity" exists, it only

27

28  [6] "Racketeering activity" is defined in 18 U.S.C. § 1961(1).

MOTION TO DISMISS COMPLAINT          9          **Perkins Coie LLP**
Case No.  3:20-cv-05572-RSM                    1201 Third Avenue, Suite 4900
                                               Seattle, WA 98101-3099
149110316.2                                    Phone: 206.359.8000

1   specifies two possible racketeering activities:  violations of 18 U.S.C. § 1832 (trade secret

2   misappropriation) and § 1343 (wire fraud).  Complaint ¶ 12.4.

3          As discussed above, Plaintiff's trade secret misappropriation allegations are not

4   sufficiently pleaded.  Likewise, Plaintiff's allegations are insufficient to plead the elements

5   required to establish wire fraud, especially in light of the heightened pleading standards for fraud

6   under Fed. Civ. P. Rule 9(b).  *See Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751

7   F.3d 990, 997 (9th Cir. 2014).  To sufficiently plead a claim of wire fraud, Plaintiff must allege

8   specific facts demonstrating that Defendants (1) voluntarily and intentionally devised or

9   participated in a scheme to defraud, and (2) used interstate wire communication to facilitate the

10  scheme.  *Id.*

11         The heightened pleading standards under Rule 9(b) require that Plaintiff "inform each

12  defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz*

13  *v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).  Given this heightened pleading requirement, it

14  is clear Plaintiff fails to sufficiently allege details identifying Dr. Parkinson or 4319 Consulting's

15  role in the alleged fraud.  The sole allegation regarding Dr. Parkinson's alleged involvement in the

16  fraudulent scheme is that he "was evasive" at a dinner and did not disclose his confidential

17  business plans to Plaintiff.  Complaint ¶ 12.13.  There are *no* factual allegations connecting

18  4319 Consulting.  *See generally, Id.* ¶ 12.1-12.17.  Plaintiff does not allege that Dr. Parkinson

19  provided false statements or withheld information he had an obligation to disclose.  *Id.*  Of course

20  it should go without saying, Dr. Parkinson was not obligated to disclose who his current or

21  prospective clients were, especially to a potential competitor.  Nor does Plaintiff describe any of

22  the Defendants' roles in devising the alleged scheme to defraud or the manner in which it was

23  devised.  *Id.*  This dearth of information excludes wire fraud as being a sufficiently pleaded

24  predicate act to establish a RICO violation.

25         Third and finally, Plaintiff does not come close to sufficiently alleging the existence of "a

26  pattern of racketeering activity."  While two acts of racketeering activity are necessary to establish

27  a RICO violation, they are <u>not</u> sufficient to allege a RICO violation.  *Howard*, 208 F.3d at. 746.

28  "Demonstrating a pattern 'requires the showing of a relationship between the predicates and of the

MOTION TO DISMISS COMPLAINT                    10
Case No. 3:20-cv-05572-RSM

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

1    threat of continuing activity.'"  *Id.* at 750 citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242

2    (1989).  "To satisfy the continuity requirement, Plaintiffs must prove either a series of related

3    predicates extending over a substantial period of time … or past conduct that by its nature projects

4    into the future with a threat of repetition." *Howard*, 208 F.3d at 750 (quotation marks omitted).

5         Here, Plaintiff's allegations cover no more than two predicate actions (trade secrets and

6    wire fraud) and a few months of activity.  Complaint ¶ 12.4.  This does not qualify as a "series" of

7    predicate actions "over a substantial period of time."  *Howard*, 208 F.3d at 750 ("Activity that

8    lasts only a few months is not sufficiently continuous.").

9         Plaintiff also did not and cannot establish that Defendants' alleged predicate acts are, by

10   their nature, likely to be repeated or to become "a regular way of doing business." *Howard*, 208

11   F.3d at 750.  Even if Plaintiff had sufficiently alleged that racketeering activity occurred, (it did

12   not), there are no allegations that such activity is ongoing or likely to continue in the future.

13        For the numerous reasons above, Plaintiff's RICO claims are inadequately pleaded and

14   should be dismissed with prejudice.[7]

15   **E.    Plaintiff's Tortious Interference Claim Fails as a Matter of Law**

16        Plaintiff asserts several claims for tortious interference against Dr. Parkinson and 4319

17   Consulting alleging that they tortiously interfered with Plaintiff's: (a) contractual relations with

18   The Neuromonitoring Group and The Phoenix (Complaint ¶¶ 16.1-16.10), (b) business expectancy

19   in connection with Spine-Tek and Neuro Alert (*id.* ¶¶ 18.1-18.7), and (c) contractual relations with

20   Dr. Hollander and Ms. Wolfe (*id.* ¶¶ 24.1-24.9, 26.1-26.9).  None of these claims has any legal

21   merit.

22        To plead tortious interference, Plaintiff must allege (1) the existence of a valid contractual

23   relationship or business expectancy; (2) that Dr. Parkinson and 4319 Consulting had knowledge of

24   that relationship or expectancy; (3) an intentional interference inducing or causing a breach or

25   termination of the relationship/expectancy; (4) motivated by an improper purpose or accomplished

26

27   ───────────────

     [7] Because Plaintiff failed to allege the substantive elements of a RICO violation, Plaintiff's claim
28   for conspiracy fail.  *Howard*, 208 F.3d at 751 ("Plaintiffs cannot claim that a conspiracy to violate
     RICO existed if they do not adequately plead a substantive violation of RICO.").

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

by improper means; with (5) resultant damages.  *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash.2d 120, 137 (1992) *amended* (Nov. 18, 1992).  Plaintiff's complaint lacks any facts supporting the third and fourth elements for each claim, and each claim should be dismissed.

### 1.     The Phoenix and The Neuromonitoring Group Contractual Relations

Plaintiff cannot point to any specific action that Dr. Parkinson or 4319 Consulting took that caused The Phoenix or The Neuromonitoring Group to breach their contracts with Plaintiff.  Complaint ¶¶ 16.1-16.10.[8]  Plaintiff's sole allegation, based on "information and belief," is that Dr. Parkinson and 4319 Consulting "act[ed] in concert" with Dr. Hollander and Ms. Wolfe to "solicit and convert The Neuromonitoring Group and The Phoenix[.]" Complaint ¶ 16.8.  But respectfully, that simply doesn't matter.

First, such a conclusory allegation is not sufficient to establish that Defendants *intentionally interfered* with these contracts, much less that they did so *for an improper purpose*.  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Mere conclusory statements in a complaint and formulaic recitations of the elements of a cause of action are not sufficient.  Thus, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible.") (internal citations and quotation marks omitted).

Second, setting aside the utter lack of impropriety, this allegation does nothing to connect Defendants' alleged actions with The Phoenix or The Neuromonitoring Group's breach or termination of their contracts.  Plaintiff does not allege, for example, that The Neuromonitoring Group or The Phoenix contracts were *exclusive* contracts thereby dictating that any switch of service providers would be a breach of those contracts.  Even if that were the case (which it was not), Plaintiff does not allege that 4319 Consulting or Dr. Parkinson knew of such restrictions, or even cite such restrictions in its Complaint.  *See Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, No.

---

[8] Indeed, as Plaintiff is well aware, this is because it was Plaintiff that terminated the contracts, not The Phoenix or The Neuromonitoring Group.  And of course, where Plaintiff made such a decision, the Defendants are not liable.  *See Haglund v. Sawant*, No. C17-1614-MJP, 2018 WL 2216154, at *2 (W.D. Wash. May 15, 2018) ("Plaintiff's claim for tortious interference fails, as liability cannot be imposed based on his 'voluntary business decisions'"), aff'd, 781 F. App'x 586 (9th Cir. 2019).

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM
149110316.2                                                         12                           **Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

C11-544RSL, 2012 WL 836233, at *4 (W.D. Wash. Mar. 12, 2012) (granting defendant's judgment on the pleadings where plaintiff failed to allege that defendant "desired to bring about, or was certain or substantially certain" his actions would result in a breach).

To state the obvious: competing isn't an improper purpose, and losing a client to someone else isn't grounds for a 50-page lawsuit, especially where that client had every right to switch its business to another company. *See Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wash. App. 1, 12, (1989) ("Asserting one's rights to maximize economic interests does not create an inference of ill will or improper purpose."); *see also Organo Gold Int'l, Inc. v. Ventura*, No. C16-487RAJ, 2016 WL 1756636, at *9 (W.D. Wash. May 3, 2016) (finding no improper purpose or motive where competitor-defendant solicited plaintiff's distributors to become its distributors).

Similarly, aside from speculative conclusions, Plaintiff does not allege any facts imputing improper motives or means onto Dr. Parkinson or 4319 Consulting.  Complaint ¶ 16.8.  Plaintiff does not allege, for instance, that Dr. Parkinson or 4319 Consulting were prohibited for some reason from soliciting Plaintiff's clients.  Dr. Parkinson and his business were fully within their rights to seek to add new clients.  *Heublein, Inc.*, 55 Wash. App. at 12; *Ventura*, 2016 WL 1756636, at *9.

The foregoing deficiencies warrant the dismissal of these claims with prejudice.  *Harris v. Sears Holding Corp.*, No. 2:10-CV-01339-MJP, 2011 WL 219669, at *4 (W.D. Wash. Jan. 24, 2011) (dismissing claim where plaintiff "failed to specify which contractual relationship was interfered with or what improper purpose or means Sears used to interfere with the contracts.").

## 2.   Spine-Tek and Neuro Alert Business Expectancies

Plaintiff's claims regarding Spine-Tek and Neuro Alert are even more deficient than the above claims.  As before, Plaintiff fails to specify any actions taken by 4319 Consulting or Dr. Parkinson that caused the termination of the alleged business expectancies from Spine-Tek and Neuro Alert.  In fact, Plaintiff's sole relevant allegation is that Dr. Parkinson was *copied* on a single email sent by Dr. Hollander to Spine-Tek.  Complaint ¶ 18.4.  And of course, because Plaintiff does not allege Dr. Parkinson or 4319 Consulting took any actions, it also provides no allegations regarding their motives.  *See generally,* Complaint ¶ 18.1-18.7.  Finally, Plaintiff does

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

1   not allege that Dr. Parkinson or 4319 Consulting knew of Plaintiff's supposed business

2   expectancies from Spine-Tek or Neuro Alert.  *Id.*

3        Plaintiff's allegations are wholly insufficient to support any tortious interference claims.

### 3.      Dr. Hollander and Ms. Wolfe's Contractual Relations

5        Lastly, Plaintiff's claims regarding 4319 Consulting and Dr. Parkinson's alleged

6   interference with Dr. Hollander and Ms. Wolfe's contracts fare no better than Plaintiff's other

7   tortious interference claims.  Once again, Plaintiff provides only a cursory assertion of tortious

8   interference.  Plaintiff alleges that 4319 Consulting and Dr. Parkinson acted to "solicit and

9   convert" Dr. Hollander to become an employee of 4319 Consulting, and to solicit Ms. Wolfe to

10  assist in Dr. Hollander's transfer to 4319 Consulting.  Complaint ¶ 24.7; 26.7.  Importantly,

11  Plaintiff does not allege that 4319 Consulting or Dr. Parkinson's knew their alleged "solicitation"

12  would cause, or that they intended to cause Dr. Hollander or Ms. Wolfe to breach their contracts.

13  *Id.* ¶¶ 24.1-24.9, 26.1-26.9.  Nor does it allege that 4319 Consulting or Dr. Parkinson had

14  knowledge of Plaintiff's contracts with Dr. Hollander and Ms. Wolfe, let alone restrictions in the

15  contract that prohibited the alleged conduct.  *Id.*

16       Finally, as with its other tortious interference claims, Plaintiff does not allege any facts

17  regarding 4319 Consulting or Dr. Parkinson's "improper motives."  To the contrary, Dr. Parkinson

18  and 4319 Consulting were well within their rights to provide a job offer to Dr. Hollander.  *See*

19  *Heublein, Inc.*, 55 Wash. App. at 12; *Ventura*, 2016 WL 1756636, at *9.

20       As with Plaintiff's other tortious interference claims, and for the same reasons, these

21  tortious interference claims should also be dismissed.

### F.      Plaintiff's Allegations Regarding Dr. Hollander and Ms. Wolfe's Alleged Breaches of Loyalty Do Not State a Claim Regarding 4319 Consulting or Dr. Parkinson

24       Counts Fifteen and Sixteen allege that Dr. Hollander and Ms. Wolfe breached their duties

25  of loyalty to Plaintiff.  Complaint ¶¶ 20.1-21.7.  While Plaintiff does not allege a separate claim

26  against 4319 Consulting and Dr. Parkinson, it tacks on allegations that they are somehow jointly

27  and severally liable for these alleged breaches for aiding, in some unexplained manner,

28

MOTION TO DISMISS COMPLAINT                            14                    **Perkins Coie LLP**
Case No.  3:20-cv-05572-RSM                                          1201 Third Avenue, Suite 4900
                                                                        Seattle, WA 98101-3099
149110316.2                                                             Phone: 206.359.8000

1   Dr. Hollander and Ms. Wolfe.  *Id.*  This is not sufficient to state a claim against Dr. Parkinson or

2   4319 Consulting.

3          First, Plaintiff's failure to plead a specific claim against Dr. Parkinson or 4319 Consulting

4   that is separate from the claim of Dr. Hollander or Ms. Wolfe's alleged breach of loyalty is an

5   independently sufficient reason to dismiss this claim.  *In re Washington Mut., Inc. Sec., Derivative*

6   *& ERISA Litig.*, No. 2:08-MD-1919 MJP, 2010 WL 1734848, at *8 (W.D. Wash. Apr. 28, 2010)

7   ("Plaintiffs have not pleaded a separate claim for aiding and abetting [a breach of fiduciary

8   duties].  This alone is fatal.")

9          Second, whatever claim Plaintiff is attempting to assert against 4319 Consulting and

10  Dr. Parkinson related to these alleged breaches of fiduciary duties is not sufficiently pleaded.  To

11  plead a claim for aiding and abetting a breach of fiduciary duties, Plaintiff must allege that 4319

12  Consulting and Dr. Parkinson *knew* Dr. Hollander or Ms. Wolfe's conduct constituted a breach of

13  duty ***and*** gave substantial assistance or encouragement to do so.  *Id.*; *see also Swartz v. Presidio*

14  *Advisory Grp.*, No. C03-1252MJP, 2008 WL 2545054, at *3 (W.D. Wash. June 24, 2008).

15  Plaintiff does not sufficiently allege either element; it merely recites the elements but provides no

16  factual support.  Complaint ¶¶ 20.6; 21.6.  More troubling, Plaintiff's conclusory allegations show

17  it is simply speculating as to whether the elements are satisfied, apparently unsure of who was

18  involved and how.  *See e.g., id.* ¶ 20.6 (alleging "on information and belief" that in regard to

19  Dr. Hollander's alleged breach, Defendants (a) acted in concert with Dr. Hollander; (b) gave

20  Dr. Hollander substantial assistance "*or*" encouragement, "*and/or*" (c) breached a duty of loyalty

21  through their own conduct); ¶ 21.6 (same regarding Ms. Wolfe's alleged breach).  Again, such

22  conclusions which merely recite the elements of the claim, should be discounted and the claim

23  dismissed.  *Chavez*, 683 F.3d at 1108.

24         Indeed, Plaintiff does not provide *any* relevant factual allegations regarding Dr. Parkinson

25  or 4319 Consulting's involvement in the alleged breaches of loyalty.  It simply repeats the same

26  refrain, that Dr. Parkinson and 4319 Consulting "directly or indirectly aided, assisted, abetted,

27  advised, encouraged, or counseled" Dr. Hollander and Ms. Wolfe.  Complaint ¶¶ 20.6; 21.7.

28  These bare allegations, copied and pasted at the end of nearly each of Plaintiff's claims, do not

MOTION TO DISMISS COMPLAINT                           15
Case No. 3:20-cv-05572-RSM

149110316.2

sufficiently plead a claim against 4319 Consulting or Dr. Parkinson regarding Dr. Hollander and Ms. Wolfe's alleged breaches of duty, and any such claims should be dismissed.

**G.     Plaintiff's Civil Conspiracy Claims Fail as a Matter of Law**

In connection with all but four of its claims,[9] Plaintiff alleges civil conspiracy.  Each of these claims should be dismissed.

To plead a claim of a civil conspiracy, Plaintiff must allege facts establishing that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy.  *All Star Gas, Inc., of Washington v. Bechard*, 100 Wash. App. 732, 740 (2000).  It is not sufficient to, as Plaintiff does here, merely assert the elements of civil conspiracy by claiming the defendants "combined to accomplish an unlawful purpose" and "entered an agreement to accomplish their conspiracy."  *See e.g.,* Complaint ¶¶ 7.1-7.4, 9.1-9.4, 13.1-13.5; *see also Chavez*, 683 F.3d at 1108 ("recitations of the elements of a cause of action are not sufficient").  Tellingly, Plaintiff uses this identical language throughout all eight of its claims for civil conspiracy.  *See* Complaint (Counts 2, 4, 6, 8, 10, 12, 14, 20, and 22).

This "loaded, conclusory language that is devoid of factual basis" that Plaintiff uses for each of its civil conspiracy claims is insufficient to state a claim.  *Hunter v. Ferebauer*, 980 F. Supp. 2d 1251, 1261 (E.D. Wash. 2013) (dismissing civil conspiracy claim).  Instead, Plaintiff must at a minimum "allege *specific facts* showing an agreement and concerted action amongst the defendants."  *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004) (emphasis added); *see also Ferrie v. Woodford Research, LLC*, No. 3:19-CV-05798-RBL, 2020 WL 3971343, at *7 (W.D. Wash. July 14, 2020) (dismissing civil conspiracy claim where plaintiff did not "allege *facts* sufficient for the court to reasonably infer that [the defendants] entered into an agreement") (emphasis added) (internal quotation marks omitted).

---

[9] The only claims Plaintiff does not allege civil conspiracy regarding are the breach of Dr. Hollander and Ms. Wolfe's contracts (Claims 17 and 18) and breach of loyalty claims (Claims 15 and 16).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

1    Finally, and as described herein, because Plaintiff failed to sufficiently plead any

2    underlying claims against Dr. Parkinson or 4319 Consulting that the civil conspiracy claims are

3    based on, the civil conspiracy claims fail to allege an "unlawful purpose" and the claims should be

4    dismissed.  *See Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011)

5    ("Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not

6    exist independently—its viability hinges on the existence of a cognizable and separate underlying

7    claim.").

8    With no factual allegations showing an agreement among the defendants, nor sufficient

9    allegations to show an unlawful purpose, Plaintiff's various civil conspiracy claims should be

10   dismissed.

11   ## IV.   CONCLUSION

12   For the reasons set forth herein, the Court should dismiss each of Plaintiff's claims in

13   regard to 4319 Consulting and Dr. Parkinson.  Dismissal should be with prejudice because

14   Plaintiff's allegations and widespread speculation shows it lacks factual support for its claims

15   against Dr. Parkinson and 4319 Consulting.

16

17   Date:  August 12, 2020

s/  *David A. Perez*

18                                        David A. Perez, WSBA No. 43959
                                          Christian W. Marcelo, WSBA No. 51193
19                                        **Perkins Coie LLP**
                                          1201 Third Avenue, Suite 4900
20                                        Seattle, WA  98101-3099
                                          Telephone:  206.359.8000
21                                        Facsimile:  206.359.9000
                                          E-mail:  DPerez@perkinscoie.com
22                                        E-mail:  CMarcelo@perkinscoie.com

23                                        Attorneys for Defendants
                                          JEFFERY PARKINSON and his
24                                        COMMUNITY PROPERTY, and 4319
                                          CONSULTING, INC.

25

26

27

28

MOTION TO DISMISS COMPLAINT                                17
Case No.  3:20-cv-05572-RSM

149110316.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on August 12, 2020, I electronically filed the foregoing Defendants Jeffrey Parkinson, 4319 Consulting, Inc. and Marital Community of Jeffery Parkinson's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney(s) of record:

| | |
|---|---|
| John E. Zehnder, Jr., WSBA #29440<br>johnz@zehnderllp.com<br>Joseph p. Zehnder, WSBA #28404<br>joez@zehnderllp.com<br>Zehnder Law LLP<br>6625 Wagner Way NW, Suite 203<br>Gig Harbor, WA 98335<br>Phone: 253-235-3536<br><br>Attorneys for Plaintiff<br>NW Monitoring LLC | ☐ U.S. Mail<br>☐ E-Mail<br>☒ E-File<br>☐ Hand Delivery<br>☐ Overnight Delivery |

DATED this 12th day of August, 2020.

s/ *David A. Perez*
David A. Perez, WSBA No. 43959
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendants
JEFFERY PARKINSON and his
COMMUNITY PROPERTY, and 4319
CONSULTING, INC.

MOTION TO DISMISS COMPLAINT
Case No.  3:20-cv-05572-RSM

149110316.2

18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000