1

2

3

4

5

6

7                               THE HONORABLE RICARDO S. MARTINEZ

8                    **UNITED STATES DISTRICT COURT**
                 **WESTERN DISTRICT OF WASHINGTON**

9

| | |
|---|---|
| 10   NW MONITORING LLC, a Delaware | Case No. 3:20-cv-05572 |
| 11   limited liability company, | |
| 12              Plaintiff, | **OPPOSITION BY PLAINTIFF NW MONITORING LLC** IN RESPONSE TO 4319 CONSULTING, INC.'S AND PARKINSON'S MOTIONS TO DISMISS COMPLAINT |
| 13        vs. | |
| 14   SUSAN L. HOLLANDER, et al. | |
| 15            Defendants. | (Oral Argument **Not** Requested) |
| 16 | |
| 17 | NOTE ON MOTION CALENDAR: |
| 18 | September 11, 2020 |

19

20

21

22

23

24

25

26

27

28

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319          **ZEHNDER LAW LLP**
CONSULTING, INC., ET AL. MOTION TO DISMISS         6625 Wagner Way, Suite 203
COMPLAINT (Cause No. 3:20-cv-05572) -- i               Gig Harbor, WA 98335
                                                Telephone: (253) 235-3536

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ........................................................................iii

3  I.   INTRODUCTION ...........................................................................1

4  II.  BACKGROUND ..............................................................................2

5       A.   EXECUTIVE SUMMARY OF FACTS ............................................2

6       B.   FACTS STATED IN THE COMPLAINT ......................................3

7            1.   Introduction ....................................................................3

8
9            2.   Identity of Plaintiff and Defendants Hollander and Wolfe ............3

10           3.   Trade Secrets Specifically Identified ......................................3

11           4.   Hollander Gives Resignation Notice to Work for Parkinson/4319....4

12           5.   Hollander's Deceptions on behalf of Defendant 4319/Parkinson .....4

13
14           6.   On Behalf of Parkinson/4319, Hollander Starts Process of Stealing
                  Plaintiff's Potential Clients ..................................................5

15           7.   Parkinson/4319 *Directly* Involved in the Stealing of
                  Plaintiff's Potential Clients ..................................................5
16
17           8.   Parkinson/4319 Tries to Prevent Discovery of Conspiracy.............6

18           9.   Parkinson/4319 *Directly* Instructs Plaintiff's Employees Hollander
                  and Wolfe to Commit Wrongful Acts Against Plaintiff.................6
19
20           10.  Parkinson/4319 *Directly* Involved with Hollander in Successful
                  Effort to Steal Plaintiff Clients While Hollander Was Plaintiff's
21                Employee .......................................................................7

22           11.  Wolfe Lies to Cover Up Her Involvement .................................7

23           12.  Parkinson/4319 and Hollander Steal Trade Secrets .....................7

24           13.  Parkinson/4319 Directs Plaintiff Employee Wolfe to Perform
                  Work for Defendant 4319; Wolfe Simultaneously Steals
25                Plaintiff Trade Secrets ........................................................8

26           14.  Wolfe, at Hollander's Direction, Improperly Transfers Files
                  To Self ..........................................................................8
27
28

---

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319                **ZEHNDER LAW LLP**
CONSULTING, INC., ET AL. MOTION TO DISMISS                    6625 Wagner Way, Suite 203
COMPLAINT (Cause No. 3:20-cv-05572) -- ii                     Gig Harbor, WA 98335
                                                              Telephone:  (253) 235-3536

15. Hollander, While Plaintiff's Employee, Performs Additional Work For Defendant 4319, As Well As Another Plaintiff Competitor .......9

16. Wolfe Also, While Plaintiff's Employee, Performs Work for Another Plaintiff Competitor .................................................9

III. ARGUMENT..........................................................................10

    A. LEGAL STANDARDS FOR PLEADING ........................................10

        1. Introduction ..............................................................10

        2. General Broad Principles:  Fair Notice; Construed to "Do Justice" ...10

        3. Factual Allegations:  Taken as True; Plausible Claim ...................10

        4. Court to Use Common Sense; Reasonable Inference Sufficient ........11

        5. Complaint to be Read As A Whole; Facts Taken In Their Entirety ....11

        6. *Prima Facie* Case of Liability NOT Required ............................12

        7. Circumstantial Evidence is Sufficient .....................................12

        8. Court Should Consider Plaintiff's Limited Access to Information ......13

    B. PLAINTIFF STATES A CLAIM FOR THEFT OF TRADE SECRETS ........13

        1. Trade Secrets Have Been Identified by Plaintiff ...........................13

        2. Misappropriation of Trade Secrets by All Defendants.....................15

    C. COMPUTER FRAUD AND ABUSE ACT ("CFAA") PLEADED .............18

        1. Secret "Agents" of Defendant Make Access *Unauthorized* .............18

        2. Defendant 4319/Parkinson Directed Actions of Its Secret Agents ......19

    D. PLAINTIFF STATES A CLAIM FOR RICO VIOLATIONS ...................19

    E. PLAINTIFF STATES CLAIMS FOR TORTIOUS INTERFERENCE .........20

        1. The Phoenix and The Neuromonitoring Group:  Contracts .............22

        2. Spine-Tek and Neuro Alert:  Business Expectancies ....................22

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- iii

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

3.    Hollander's and Wolfe's Contractual Relations ............................22

F.    DEFENDANT 4319 AIDS AND ABETS BREACH OF
FIDUCIARY DUTY ................................................................................23

G.    PLAINTIFF STATES CLAIM FOR CONSPIRACY ..............................23

IV.    CONCLUSION ...................................................................................................24

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- iv

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

1

## TABLE OF AUTHORITIES

2      **Cases**

3
*ABB Turbo Sys. AG v. Turbousa, Inc.,*
4          774 F.3d 979 (Fed. Cir. 2014) …………………………………....12, 15

5      *Albert's Organics, Inc. v. Holzman,*
           445 F. Supp. 3d 463 (N.D. Cal. 2020) ……………………………...…14, 22
6
7      *Ashcroft v. Iqbal,*
           556 U.S. 662, 129 S.Ct. 1937 (2009) …………………………………...10, 11, 17
8
*Bausch v. Stryker Corp.,*
9          630 F.3d 546 (7th Cir. 2010) …………………………………………2, 12, 15

10     *Bautista v. Los Angeles Cty.,*
           216 F.3d 837 (9th Cir. 2000) ……………………………………………10
11
12     *Bell Atlantic Corp. v. Twombly,*
           550 U.S. 544, 127 S.Ct. 1955 (2007) …………………………………....10, 11, 12, 13
13
14     *Bombardier Inc. v. Mitsubishi Aircraft Corp.,*
           383 F. Supp. 3d 1169 (W.D. Wash. 2019) ………………………………13
15
*Boyle v. United States,*
16          556 U.S. 938, 129 S. Ct. 2237 (2009) ……………………………………20

17     *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
           637 F.3d 1047 (9th Cir. 2011) ……………………………………………11
18
19     *Capogrosso v. Supreme Court of New Jersey,*
           588 F.3d 180 (3rd Cir. 2009) ……………………………………… 11
20
*Cardigan Mt. Sch. v. New Hampshire Ins. Co.,*
21          787 F.3d 82 (1st Cir. 2015) ………………………………………………12

22     *Coleman v. Maryland Court of Appeals,*
           626 F.3d 187 (4th Cir. 2010) ……………………………………………...12
23
24     *Compuvest Corp. v. Dolinsky,*
           No. C07-1524RAJ, 2009 WL 1604525 (W.D. Wash. June 5, 2009) …………...21
25
26     *Dawson v. S. Corr. Entity,*
           No. C19-1987 RSM, 2020 WL 1182808 (W.D. Wash. Mar. 12, 2020) ………..3, 13

27

28

---

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319          **ZEHNDER LAW LLP**
CONSULTING, INC., ET AL. MOTION TO DISMISS          6625 Wagner Way, Suite 203
COMPLAINT (Cause No. 3:20-cv-05572) -- v          Gig Harbor, WA 98335
                                                  Telephone:  (253) 235-3536

*Dellen Wood Prod., Inc. v. Washington State Dep't of Labor & Indus.*,
179 Wn. App. 601, 319 P.3d 847 (2014) ...............................................21

*Elcon Const., Inc. v. E. Washington Univ.*,
174 Wash. 2d 157, 273 P.3d 965 (2012) ...............................................21

*Erickson v. Pardus*,
551 U.S. 89, 127 S.Ct. 2197 (2007) ..............................................10, 15

*Evergreen Moneysource Mortg. Co. v. Shannon*,
167 Wn. App. 242, 274 P.3d 375 (2012) ...............................................20

*Germanowski v. Harris*,
854 F.3d 68 (1st Cir. 2017) ..............................................11, 17

*Greensun Grp., LLC v. City of Bellevue*,
7 Wn. App. 2d 754, 436 P.3d 397 *review denied*,
193 Wash. 2d 1023, 448 P.3d 64 (2019) ...............................................22

*Harris v. Rand*,
682 F.3d 846 (9th Cir. 2012) ..............................................10

*Hernandez-Cuevas v. Taylor*,
723 F.3d 91 (1st Cir. 2013) ..............................................11

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
295 F. Supp. 3d 927, 982 (N.D. Cal. 2018) ...............................................20

*In re Glumetza Antitrust Litig.*,
No. C 19-05822 WHA, 2020 WL 1066934 (N.D. Cal. Mar. 5, 2020) ..............23

*Keys v. Humana, Inc.*,
684 F.3d 605 (6th Cir. 2012) ..............................................12, 13

*Keystone Fruit Mktg., Inc. v. Brownfield*,
352 F. App'x 169 (9th Cir. 2009) ..............................................20, 21, 22

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012) ..............................................12

*Kieburtz & Assocs., Inc. v. Rehn*,
68 Wn. App. 260, 842 P.2d 985 (1992) ..............................................20, 22

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163, 113 S.Ct. 1160 (1993) ..............................................10

OPPOSITION BY PLAINTIFF IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- vi

ZEHNDER LAW LLP
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ………………………………………...18

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ………………………………………………14

*Manning v. Boston Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013) …………………………………………………11

*Moore v. Commercial Aircraft Interiors, LLC*,
    168 Wash. App. 502, 278 P.3d 197 (2012) ……………………………………21

*NCMIC Fin. Corp. v. Artino*,
    638 F. Supp. 2d 1042 (S.D. Iowa 2009), *modified*, No. 4:07-CV00204-JEG,
    2009 WL 10669611 (S.D. Iowa Nov. 10, 2009) …………………………………18

*Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*,
    114 Wn. App. 151, 52 P.3d 30 (2002), *as corrected* (Sept. 23, 2002) ……………21, 22

*Nw. Home Designing Inc. v. Sound Built Homes Inc.*,
    776 F. Supp. 2d 1210 (W.D. Wash. 2011) ……………………………………22

*OSU Student Alliance v. Ray*,
    699 F.3d 1053 (9th Cir. 2012) …………………………………………12, 13

*Robertson v. Sea Pines Real Estate Cos., Inc.*,
    679 F.3d 278 (4th Cir. 2012) ……………………………………......2, 12, 16

*Rodríguez-Reyes v. Molina-Rodríguez*,
    711 F.3d 49 (1st Cir. 2013) …………………………………………11, 12, 13

*Self Directed Placement Corp. v. Control Data Corp.*,
    908 F.2d 462 (9th Cir. 1990) ………………………………………......11

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*,
    119 F. Supp. 2d 1121 (W.D. Wash. 2000) ……………………………......18

*Silvas v. E\*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) …………………………………………10, 15

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506, 122 S.Ct. 992 (2002) ……………………………………12, 13

*Titus v. Tacoma Smeltermen's Union Local No. 25*,
    62 Wash.2d 461, 383 P.2d 504 (1963) ……………………………………20

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- vii

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.*,
   115 F. Supp. 3d 1184 (W.D. Wash. 2015) …………………………………...14

*Valadez-Lopez v. Chertoff*,
   656 F.3d 851 (9th Cir. 2011) …………………………………………………10

**Statutes**

18 U.S.C. § 1030(g) ……………………………………………………………18

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ………………………………………………….10, 15

Fed. R. Civ. P. 8(e) ……………………………………………………...10, 15

Fed. R. Civ. P. 11(b) …………………………………………………………..2

Fed. R. Civ. P. 12(b)(6) ………………………………………………………22

LCR 7(g)  …………………………………………………………………….22

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- viii

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

# I.    INTRODUCTION

Plaintiff NW Monitoring LLC (hereinafter, "Plaintiff") has pleaded the necessary facts to detail a successful plot by Defendants Parkinson and 4319 Consulting, Inc. (collectively, "Defendant 4319") to use its "secret agents" to steal Plaintiff's trade secrets, clients and potential clients. Those "secret agents" were Plaintiff's employees Defendants Hollander and Wolfe, both of whom engaged in the wrongful acts <u>while employees of Plaintiff</u>. Plaintiff's allegations are not based on speculation. Instead, because all of the Defendants were brazen and foolish enough to email each other through <u>Plaintiff's</u> computer system, Plaintiff has actual email evidence revealing the outlines of the plot – which it alleged in the Complaint.

Defendant 4319 ignores these facts, not to mention much of the law on pleading standards, and pretends that Plaintiff has failed to allege sufficient facts detailing the plot. Glaringly, the Court should note that Defendant 4319 omits most of the facts from its briefing, puts an improper <u>paraphrase "spin"</u> on the facts that it does include (largely failing to quote facts stated in the Complaint), and – most importantly – fails to lay out all the facts in one place in nice chronological order. This failure was intentional because when the Court reads the facts laid out all at once in chronological order – as set forth below – it quickly becomes apparent that Defendants are guilty of everything alleged in the Complaint. This is not a close call.

Notwithstanding, Defendant 4319 has brought its motion in a desperate attempt to avoid the discovery that would reveal the depths of its plot and its bad conduct. (Moreover, opposing counsel has inadvertently revealed that – in an effort to ward off prosecution – Defendant 4319's intent here is to make this case as expensive as possible for Plaintiff.[1]) This Court should not

---

[1] In an email on July 8, 2020, after the Complaint had been filed but prior to serving Defendant 4319, opposing counsel David Perez issued his thinly veiled threat referencing, "Candidly, we both know discovery will be more burdensome for your client than ours. And if we can't resolve it, we intend to file a motion to dismiss, and seek fees against NWM

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 1

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

allow Defendant 4319 – nor the other Defendants – to get away with this, and should deny its motion in its entirety.

## II.   BACKGROUND
### A.   EXECUTIVE SUMMARY OF FACTS

The facts set forth in Plaintiff's Complaint describe a very simple set of facts outlining Defendant 4319's plot using Plaintiff's employees Hollander and Wolfe as *"secret agents"* to: 1) steal Plaintiff's clients; 2) steal Plaintiff's business expectancies (i.e. potential clients); and, 3) steal Plaintiff's trade secrets.  Defendant 4319 sought to, and did, accomplish this by directing Plaintiff's employees Hollander and Wolfe to take these properties/expectancies so that they would go with Hollander when she left to work for Defendant 4319.

Critically, the foregoing plot and actions did not occur overnight.  Instead, Hollander was working as a secret agent of Defendant 4319 well before she submitted her resignation, and continued to do so well after her resignation during the "transition" period.  While still an employee of Plaintiff, Hollander continued the process of completing thefts at the direction of Defendant 4319.  Of course, Defendant 4319 knew that everything secret agents Hollander and Wolfe did, and were directed to do, was a breach of their fiduciary duties to Plaintiff.  Defendant 4319 benefited from the actions of its secret agents.

It should not be lost on the Court that it is a minor miracle that Plaintiff discovered what the Defendants had done.  Had the Defendants not been foolish and brazen enough to use Plaintiff's own computer system to send emails between them, Plaintiff likely would not have uncovered the plot.  Of course, Plaintiff has alleged these emails in the Complaint.  As this Court

---

under the trade secret statute."  Put in context, this assertion is inexplicable because Plaintiff has very little by way of discovery to produce that is responsive/discoverable in this matter.  Nearly all of the evidence relevant to this lawsuit is sitting on the computers of all the Defendants, and third parties.  (The courts have consistently held this fact as to discovery is important in analyzing the sufficiently of a plaintiff's complaint.  (See Robertson v. Sea Pines Real Estate Cos., Inc., 679 F.3d 278, 291 (4th Cir. 2012); Bausch v. Stryker Corp., 630 F.3d 546, 559 (7th Cir. 2010)).)  In any event, Plaintiff expressly reserves the right to seek sanctions pursuant to Fed. R. Civ. P. 11(b).

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 2

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

itself said in <u>Dawson v. South Correctional Entity</u>, because Defendants committed the wrongful acts alleged in the Complaint (and identified in the emails), the Complaint is sufficient and "Defendants should be more than able to connect the dots."[2]

**B.   FACTS STATED IN THE COMPLAINT**
**1.   Introduction.**

Plaintiff sets forth next most of the factual allegations pleaded in its Complaint.  After each set of facts, Plaintiff cites to at least one of the paragraphs in its Complaint where the fact(s) appear, and nearly all of the facts set forth below appear in multiple paragraphs of the Complaint.

**2.   Identity of Plaintiff and Defendants Hollander and Wolfe.**

Plaintiff is a medical company that provides intraoperative neuromonitoring and intraoperative oversight services throughout the United States. (NW Monitoring LLC Complaint, ¶5.1 (hereinafter, paragraph cite only).)  Defendant Susan L. Hollander ("Hollander") was employed as Plaintiff's Chief Medical Officer and as an intraoperative oversight physician from 2016 until March 31, 2020. (¶5.4)  Defendant Charlene Wolfe ("Wolfe") was employed by Plaintiff as its Credentialing Manager from March 1, 2017 until March 30, 2020, and Hollander was her direct supervisor. (¶¶5.5, 20.5)

**3.   Trade Secrets Specifically Identified.**

As a critical part of its business, Plaintiff owns and maintains various trade secrets including certain lists of information it has compiled – in particular – hospital credentialing information, physician license renewal information, and customer pricing.  This customer information is maintained on Plaintiff's protected computer and USMON program. (¶¶5.6, 6.6, 6.8, 8.2-8.5)  This trade secret information provides the framework of the Plaintiff's business.

---

[2] <u>Dawson v. S. Corr. Entity</u>, No. C19-1987 RSM, 2020 WL 1182808, at *4 (W.D. Wash. Mar. 12, 2020).

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 3

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

**4.      Hollander Gives Resignation Notice to Work for Parkinson/4319 Inc.**

On January 9, 2020, Hollander submitted a letter of resignation to Plaintiff, which resignation was to become effective on April 8, 2020. In the letter, Hollander stated that she was providing Plaintiff with three months' notice "to ease the transition." On the same date, she followed up by telephone with Plaintiff's CEO Logan McKnight ("McKnight"). During that phone call Hollander told McKnight that she was going to take a "part-time position" with Defendant 4319. The "part-time position" representation was false. (¶12.12)

**5.      Hollander's Deceptions on behalf Defendant 4319/Parkinson.**

At the time of her resignation letter, Hollander intended to work *full-time* for Defendant 4319. (¶12.12) Hollander downplayed her new employment for obvious reasons. Defendant 4319 is a direct competitor of Plaintiff. (¶¶4.3.5.7) Its President, Defendant Jeffery D. Parkinson ("Parkinson"), is Defendant 4319's sole shareholder and board member. (¶¶4.3, 5.7, 12.12) Hollander had been familiar with Parkinson and Defendant 4319 because she knew it had a contract with Plaintiff, under which contract Defendant 4319 provided Plaintiff with overflow intraoperative oversight coverage. (¶20.5)

Hollander also was dishonest about her motives with respect to providing three months' notice to Plaintiff. Instead of seeking to help Plaintiff "ease the transition," Hollander deceived Plaintiff to hide her real motive, which was to use her access to improperly use Plaintiff's resources through her continued employment with Plaintiff. That is, Hollander used Plaintiff's resources to: 1) solicit Plaintiff's customers and potential customers, and otherwise compete with Plaintiff, to the benefit of Defendant 4319; and, 2) expend time (all on Plaintiff's dime) credentialing herself with *Defendant 4319's facilities* in preparation for her new employment. Hollander did all of this while employed by Plaintiff and collecting her substantial salary from Plaintiff. (¶12.12) As discussed next, unbeknownst to Plaintiff, Hollander's breach of her

OPPOSITION BY PLAINTIFF IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 4

ZEHNDER LAW LLP
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

fiduciary duties to Plaintiff – to benefit future employer Defendant 4319 – actually started months earlier and it directly and actively involved Parkinson/4319 and Hollander's direct subordinate, Wolfe, in their conspiracy to steal Plaintiff's clients, potential clients and trade secrets. (¶12.12)

### 6.   On Behalf of Parkinson/4319, Hollander Starts Process of Stealing Plaintiff's Potential Clients.

Five months prior to Hollander delivering her resignation letter, on July 24, 2019, Hollander – while working for Plaintiff and using Plaintiff's resources – had begun moonlighting to provide intraoperative oversight services to Neuro Alert and Spine-Tek, which were not Plaintiff's customers. Hollander never asked for Plaintiff's consent, as she was required to do. Further, Spine-Tek and Neuro Alert expressed to Hollander that they were interested in doing business with Plaintiff. Hollander did not, however, bring these business expectancies to the attention of her employer, the Plaintiff. Instead, as discussed next, Hollander intentionally interfered with these valid business expectancies of Plaintiff and delivered them to Defendant 4319. (¶¶18.2, 18.4, 20.5, 22.3)

### 7.   Parkinson/4319 *Directly* Involved in Stealing of Plaintiff's Potential Clients.

On February 12, 2020, after Hollander had submitted her letter of resignation to Plaintiff, she used her email account with Plaintiff to solicit Neuro Alert and its affiliate Spine-Tek **to become customers of Defendant 4319.** Not only did she send the soliciting email from her employee/Plaintiff's email account, **she copied Parkinson, the President and sole shareholder of her soon-to-be new employer Defendant 4319.** Of course, Hollander did all of this while still employed by Plaintiff as its Chief Medical Officer and as an intraoperative oversight physician. (¶18.4) Soon thereafter, Parkinson sought a meeting with Plaintiff, which meeting it appears had no purpose other than to throw Plaintiff off the trail of the ongoing conspiracy.

OPPOSITION BY PLAINTIFF IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 5

ZEHNDER LAW LLP
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

### 8.    Parkinson/4319 Tries to Prevent Discovery of Conspiracy.

On February 21, 2020, Parkinson emailed McKnight to discuss with her the on-going relationship between Plaintiff and Defendant 4319.  Through email correspondence over the course of the next several days between Parkinson and McKnight, it was decided that McKnight and another representative of Plaintiff, Patrick O'Neil ("O'Neil"), would travel to Colorado to meet with Parkinson to further discuss the matter.  (¶12.13)

On February 26, 2020, McKnight and O'Neil travelled to Colorado and met with Parkinson over dinner.  At this meeting, McKnight and O'Neil asked Parkinson which Defendant 4319 customers Hollander would be providing intraoperative oversight services for.  Parkinson was evasive and he did not mention The Neuromonitoring Group, The Phoenix, Neuro Alert, or Spine-Tek.  As set forth above, Parkinson sought to deceive Plaintiff because he had already commenced his schemes – through Hollander and Wolfe – to steal these clients and/or business expectancies.  Apparently feeling the guilt, and while in the midst of his wrongful scheme, on March 23, 2020 Parkinson emailed O'Neil, Elizabeth Bouffanie ("Bouffanie," the COO of Plaintiff) and McKnight and stated, "I want you to know I regret not being able to be more transparent with you."  This was in reference to the meeting on February 26, 2020, wherein Parkinson was deceitful.  (¶12.13)  Of course, as discussed next, Parkinson's wrongful conduct both preceded this email as well as continued after it was sent.

### 9.    Parkinson/4319 *Directly* Instructs Plaintiff's Employees Hollander and Wolfe To Commit Wrongful Acts Against Plaintiff.

On or about March 4, 2020, while Hollander and Wolfe were employees of Plaintiff, both Hollander **and Parkinson** emailed Wolfe, sending the emails to Wolfe's employee account with Plaintiff.  They requested that Wolfe work on credentialing Hollander with Centura Health for Defendant 4319.  Centura Health is not, and was not at the time, a client of Plaintiff.  (¶20.5)

OPPOSITION BY PLAINTIFF IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 6

ZEHNDER LAW LLP
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

1

2

**10.     Parkinson/4319 _Directly_ Involved with Hollander in Successful Effort to Steal Plaintiff Clients While Hollander Was Plaintiff's Employee.**

On March 9, 2020, in email correspondence between Hollander, **Parkinson**, Justin Morris (owner of The Neuromonitoring Group), and Jake Kidd (owner of The Phoenix), Hollander wrote to confirm her plans with Defendant 4319, Parkinson, The Neuromonitoring Group, and The Phoenix regarding how the relationship would work with The Neuromonitoring Group and The Phoenix once Hollander commenced officially working for Defendant 4319. (¶20.5)  At the time, however, both The Neuromonitoring Group and The Phoenix were clients of Plaintiff, for whom Plaintiff provided intraoperative oversight services.  The Neuromonitoring Group had been under contract with Plaintiff since 2015, and The Phoenix since 2018. (¶¶5.2, 5.3) The Defendants all knew this. (¶16.4)  As such, the above-referenced March 9, 2020 email constitutes direct evidence of the scheme – and Parkinson's/4319's direct involvement – to steal The Neuromonitoring Group and The Phoenix from Plaintiff and convert them to customers of Defendant 4319.  As a result of Defendants' actions, said contracts were terminated. (¶16.6)

**11.     Wolfe Lies to Cover Up Her Involvement.**

On March 18, 2020, McKnight and Bouffanie had a telephone conversation with Wolfe wherein they advised her that Hollander soon would be leaving Plaintiff and going to work for Defendant 4319.  McKnight and Bouffanie asked Wolfe if she knew that Hollander was leaving to go to work for Defendant 4319.  In response, Wolfe lied, stating she did not know Hollander was leaving Plaintiff to work for Defendant 4319. (¶12.14)

**12.     Parkinson/4319 and Hollander Steal Trade Secrets.**

On March 23, 2020, Hollander accessed Plaintiff's protected computer and USMON computer program that contained Plaintiff's electronic medical records **and customer information**, among other trade secrets.  Hollander, using her administrative privileges in

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| **OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319 CONSULTING, INC., ET AL. MOTION TO DISMISS COMPLAINT (Cause No. 3:20-cv-05572) -- 7 | **ZEHNDER LAW LLP** 6625 Wagner Way, Suite 203 Gig Harbor, WA 98335 Telephone: (253) 235-3536 |

Plaintiff's USMON program, created two unauthorized user names: "reader@**4319consulting**.com" and "susan@**4319consulting**.com." Doing so would allow Hollander and Defendant 4319 to access and take any and all information contained on Plaintiff's USMON program, which they did. (¶¶6.6, 6.7, 8.2-8.5, 20.5)

### 13.    Parkinson/4319 Directs Plaintiff Employee Wolfe To Perform Work for Defendant 4319; Wolfe Simultaneously Steals Plaintiff's Trade Secrets.

On March 30, 2020, Wolfe accessed Plaintiff's protected computer and sent, from her email account with Plaintiff to her private email account, all of Plaintiff's proprietary trade secret information related to hospital credentialing and physician license renewals. Not coincidentally, on the same date of March 30, 2020, in email correspondence between Hollander, **Parkinson** and Wolfe, both Hollander **and Parkinson** directed Wolfe to work on credentialing Hollander as a Defendant 4319 employee at all of the facilities where Hollander was credentialed for Plaintiff. Moreover, Hollander **and Parkinson** also directed Wolfe to work on behalf of Defendant 4319 and start credentialing for Dr. Anne Moise, **another employee of Defendant 4319.** Wolfe took the actions she was directed to take. Hollander and Wolfe were employees of Plaintiff at the time and, of course, they took these actions without the knowledge or consent of Plaintiff. (¶¶6.3, 10.2-10.4, 20.5, 21.5)

### 14.    Wolfe, at Hollander's Direction, Improperly Transfers Files to Self.

In addition to the foregoing, at Hollander's direction, Wolfe not only commenced credentialing Hollander at the facilities that Defendant 4319 worked with, but it appears that as far back as October 2019 Wolfe was working for Defendant 4319. That is, at Hollander's direction, on October 29, 2019 Wolfe used her email account with Plaintiff to email to her private email account 17 of Plaintiff's patient logs. Once again on January 17, 2020, Wolfe repeated this conduct, sending to her private email account five of Plaintiff's patient logs. These patient

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 8

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

logs contained unsecured individually identifiable health information relating to hundreds of individuals, and were not transmitted in an approved, secured manner (i.e. a violation of the Health Insurance Portability and Accountability Act), thereby causing Plaintiff damages. (¶20.5)

### 15. Hollander, While Plaintiff's Employee, Performs Additional Work for Defendant 4319, As Well As Another Plaintiff Competitor.

Further, in addition to Hollander moonlighting with companies that she delivered to Defendant 4319 instead of Plaintiff – discussed above – while employed by Plaintiff she also acted as the Chief Medical Officer of The Phoenix, a direct competitor of Plaintiff and also its client. (¶¶20.5, 5.2, 5.3) Moreover, while still employed by Plaintiff, Hollander started providing intraoperative oversight services **on behalf of Defendant 4319** for Precision IOM, which company also is a customer of Plaintiff. Once again, all of these actions were taken without the knowledge or consent of Plaintiff. (¶20.5)

### 16. Wolfe Also, While Plaintiff's Employee, Performs Work For Another Plaintiff Competitor.

As was the case with Hollander, Wolfe also engaged in multiple acts of unauthorized moonlighting – which her employment agreement expressly prohibited – while employed with Plaintiff. She not only performed prohibited work for Hollander, Defendant 4319 and Parkinson, she also performed part-time credentialing work for SpecialtyCare, Inc., a direct competitor of Plaintiff. Specifically, on or about December 20, 2019 and January 10, 2020, Wolfe emailed credentialing information regarding Dr. Laverne D. Gugino to her private email account from her Plaintiff employee email account in connection with her part-time credentialing work for SpecialtyCare, Inc. (¶21.5)

OPPOSITION BY PLAINTIFF IN RESPONSE TO 4319 CONSULTING, INC., ET AL. MOTION TO DISMISS COMPLAINT (Cause No. 3:20-cv-05572) -- 9

ZEHNDER LAW LLP
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   ARGUMENT
### A.   LEGAL STANDARDS FOR PLEADING
#### 1.   Introduction.

This Court is well aware of the general principles upon which the sufficiency of a complaint is to be judged.   However, after briefly discussing the broad general principles, Plaintiff will highlight certain additional pleading principles that are particularly applicable here (given the arguments raised by opposing counsel).   It should be noted that Defendant 4319's brief provides very little commentary or citation to the law on pleading – see short paragraph on page 3 of its brief – and even fails to cite to the leading Supreme Court case Bell Atlantic Corp. v. Twombly.   Based on the law, discussed next, it is clear why.

#### 2.   General Broad Principles: Fair Notice; Construed to "Do Justice."

A complaint filed in federal court requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[3]   The complaint is sufficient if it gives the defendant "fair notice of what the … claim is and the grounds upon which it rests."[4]   The complaint need not contain detailed factual allegations supporting the claim, rather federal courts and litigants "must rely on summary judgment and control of discovery to weed out unmeritorious claims. . . ."[5]   The Federal Rules of Civil Procedure ("FRCP") govern the sufficiency of pleadings in federal actions, even those based on diversity jurisdiction.[6]   The FRCP is designed to minimize disputes over pleading technicalities.[7]   Pleadings in federal courts "must be construed so as to do justice."[8]

#### 3.   Factual Allegations:  Taken as True; Plausible Claim.

Plaintiff must provide "factual allegations" that "raise a right to relief above the

---

[3] Fed. R. Civ. P. 8(a)(2), (e).
[4] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).
[5] Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 1163 (1993); Bautista v. Los Angeles Cty., 216 F.3d 837, 843 (9th Cir. 2000).
[6] Harris v. Rand, 682 F.3d 846, 850 (9th Cir. 2012).
[7] See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1950 (2009).
[8] Fed. R. Civ. P. 8(e).

---

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 10

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

speculative level" to the "plausible" level.[9]  The allegations of material fact are taken as true and construed *in the light most favorable to the pleader*.[10]  Plaintiff must merely provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11]  The plaintiff must merely "nudge[][its] claims across the line from conceivable to plausible ..."[12]

#### 4.    Court to Use Common Sense; Reasonable Inference Sufficient.

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13] A claim may be implied from facts alleged and it is not always necessary to specify the precise nature of the claim asserted as long as the facts alleged put defendant on notice thereof.[14] In deciding whether a pleading states a plausible claim for relief, the court must consider the complaint's factual allegations, "together with all reasonable inferences" from those allegations.[15] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  As such, "common sense borne of real world experience" must be used in the plausibility analysis.[17]

#### 5.    Complaint to be Read As A Whole; Facts Taken In Their Entirety.

When analyzing the complaint, "[it] should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."[18]  The court must determine

---

[9] Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, fn. 3; Iqbal, 556 U.S. at 679-80, 129 S.Ct. at 1950-51.
[10] See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007); Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1003-04 (9th Cir. 2008).
[11] Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Valadez-Lopez v. Chertoff, 656 F.3d 851, 858-59 (9th Cir. 2011).
[12] Twombly, 550 U.S. at 570, 127 S.Ct. at 1974.
[13] Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.
[14] Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 466 (9th Cir. 1990).
[15] Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011); Capogrosso v. Supreme Court of New Jersey, 588 F.3d 180, 184 (3rd Cir. 2009).
[16] Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.
[17] Germanowski v. Harris, 854 F.3d 68, 74-75 (1st Cir. 2017).
[18] Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (internal quotations omitted).

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 11

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

1   "whether, 'taken in their entirety,' the facts alleged are enough to state a claim."[19]  The operative

2   question "in assessing plausibility is not whether the complaint makes any particular factual

3   allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to

4   render plaintiffs' entitlement to relief plausible.'"[20]

5   ### 6.    *Prima Facie* Case of Liability NOT Required.

6       Facts pled need not state a *prima facie* case of liability.[21]  A plaintiff need not "make its

7   case" against the defendants by pleading specific *evidentiary* facts supporting each element of a

8   cause of action.[22]  *Iqbal/Twombly* does *not* require plaintiff to plead a *prima facie* case because

9   "the *prima facie* model is an evidentiary, not a pleading, standard."[23]  As long as a plausible

10  claim is pled, the complaint may proceed "even if it strikes a savvy judge that actual proof of

11  those facts is improbable, and 'that a recovery is very remote and unlikely.'"[24]

12

13  ### 7.    Circumstantial Evidence is Sufficient.

14      In certain cases, "circumstantial" factual allegations may suffice as there is no

15  requirement to plead only "direct" facts.[25]  Direct evidence of some facts may be "distinctively

16  in" defendant's possession, "requiring that the threshold standard of plausibility be applied to

17  more circumstantial evidence."[26]  As such, particularly when direct evidence is in defendant's

18  hands, plausibility may be met by circumstantial evidence.[27]

19

20

21  [19] Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 49 (1st Cir. 2013).
    [20] Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013) (emphasis in original) (quoting Twombly,
22  550 U.S. at 569, 127 S.Ct. at 1973, fn. 14).
    [21] Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 996-97 (2002); Keys v. Humana, Inc., 684 F.3d
23  605, 608 (6th Cir. 2012); Rodríguez-Reyes, 711 F.3d at 51.
    [22] See OSU Student Alliance v. Ray, 699 F.3d 1053, 1078 (9th Cir. 2012) ("plaintiff's failure to prove the case on the
24  pleadings does not warrant dismissal"); Robertson v. Sea Pines Real Estate Cos., Inc., 679 F.3d 278, 291 (4th Cir.
    2012) ("Iqbal and Twombly do not require a plaintiff to prove his case in the complaint").
25  [23] Rodríguez-Reyes, 711 F.3d at 53; Keys, 684 F.3d at 609-10; Khalik v. United Air Lines, 671 F.3d 1188, 1191-92
    (10th Cir. 2012); Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).
26  [24] Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.
    [25] Cardigan Mt. Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 88 (1st Cir. 2015).
27  [26] ABB Turbo Sys. AG v. Turbousa, Inc., 774 F.3d 979, 988 (Fed. Cir. 2014).
    [27] Turbousa, 774 F.3d at 988.

28  **OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319          **ZEHNDER LAW LLP**
    CONSULTING, INC., ET AL. MOTION TO DISMISS              6625 Wagner Way, Suite 203
    COMPLAINT (Cause No. 3:20-cv-05572) -- 12               Gig Harbor, WA 98335
                                                            Telephone: (253) 235-3536

1

2

**8.      Court Should Consider Plaintiff's Limited Access to Information.**

*Twombly/Iqbal's* "requirement of nonconclusory factual detail at the pleading stage is

3
tempered by the recognition that a plaintiff may only have so much information at his disposal

4
at the outset."[28]  As such, a plaintiff's "pleading burden should be commensurate with the amount

5
of information available to [it]."[29]

6

7

**B.      PLAINTIFF STATES A CLAIM FOR THEFT OF TRADE SECRETS**
**1.      Trade Secrets Have Been Identified by Plaintiff.**

8

9

Plaintiff's Complaint specifically identifies the trade secrets at issue.  That is, Plaintiff

has identified "hospital credentialing information, physician license renewal information, and

10

11
customer pricing." (¶¶5.6, 6.8)  Plaintiff's Complaint states that this information was taken from

12
Plaintiff's "protected computer" and its "USMON program." (¶¶6.3, 6.6, 8.2, 8.3, 10.2, 10.3, 5.6,

13
6.8)  These allegations have provided Defendants with "fair notice" of the claim such that they

14
can connect the dots. [30,31]  More is not required.  Ignoring the law, however, Defendant 4319

15
essentially argues that Plaintiff must prove its case in the Complaint.  But that is not correct.

16
Plaintiff need not establish a *prima facie* case of how/why these items are a trade secret, nor

17
otherwise "make its case" in the Complaint.[32,33]

18

19

It should be recalled that Plaintiff and Defendants are in the same business, thus, the Court

should infer that Defendants are well aware of the importance and trade secret nature of hospital

20

21
credentialing information, physician license renewal information, and customer pricing.  As this

22

23

24

25

26

27

[28] Robertson, 679 F.3d at 291 (4th Cir. 2012).
[29] Bausch, 630 F.3d at 559.
[30] Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.
[31] Dawson, 2020 WL 1182808 at *4.
[32] Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 996-97 (2002); Keys, 684 F.3d at 608; Rodríguez-Reyes, 711 F.3d at 51.
[33] See Ray, 699 F.3d at 1078 (9th Cir. 2012) ("plaintiff's failure to prove the case on the pleadings does not warrant dismissal"); Robertson, 679 F.3d at 291 ("*Iqbal* and *Twombly* do not require a plaintiff to prove his case in the complaint").

28

| | |
|---|---|
| **OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319 CONSULTING, INC., ET AL. MOTION TO DISMISS COMPLAINT (Cause No. 3:20-cv-05572) -- 13 | **ZEHNDER LAW LLP** 6625 Wagner Way, Suite 203 Gig Harbor, WA 98335 Telephone: (253) 235-3536 |

court has held, "[a]lthough the complaint need not spell out the details of the trade secret, a plaintiff seeking relief for trade secret misappropriation must identify the trade secret with sufficient particularity ... to permit the defendant to ascertain at least the boundaries within which the secret lies."[34]  There can be no question Defendants know the boundaries within which the secret lies, and it is well-settled that customer information – here, customer pricing – is a trade secret and valuable.[35]  Not only is pricing information a trade secret, but so too are vendor lists (i.e. here, hospital credentialing information and physician license renewal information).[36]  Moreover, as discussed next, if the information stolen were not trade secrets, why were they secretly stolen?

The fact that Plaintiff has alleged specific facts in the Complaint detailing the theft of its trades secrets is, itself, sufficient to establish the existence of trade secrets.  As stated in _T-Mobile USA, Inc._, "[b]ecause it is unusual to steal what one can freely obtain in the public domain, it is plausible to infer that [Defendants were] stealing trade secret information. There may be other plausible inferences, but that makes no difference on a motion to dismiss."[37]  If the trade secrets Plaintiff alleges were not in fact trade secrets, why did Defendant 4319, Hollander and Wolfe make such great efforts to steal the information and hide the fact they did so?  Common sense and experience, and the inferences drawn from the circumstantial evidence alleged in the Complaint, lead to the inescapable conclusion that Defendants stole trade secrets.

To the degree that Defendants wish to argue that "hospital credentialing information, physician license renewal information, and customer pricing" are not trade secrets, they may do

---

[34] Bombardier Inc. v. Mitsubishi Aircraft Corp., 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019) (internal quotations omitted).
[35] MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993).
[36] Albert's Organics, Inc. v. Holzman, 445 F. Supp. 3d 463, 472 (N.D. Cal. 2020).
[37] T-Mobile USA, Inc. v. Huawei Device USA, Inc., 115 F. Supp. 3d 1184, 1191–94 (W.D. Wash. 2015).

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 14

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

1   so in a summary judgment motion after discovery. Because it is the Defendants "who know[]

2   what [they] misappropriated, [P]laintiff should not be compelled to divulge with specificity all

3   of its possible trade secrets (especially not to [] defendant[s] who it believes has already

4   misappropriated at least one of them) in order to proceed to discovery."[38]

5         Whether the identified items satisfy the law's definition of "trade secrets" are, at a

6   minimum, only appropriately tested on summary judgment – where the Court can expect all the

7   surrounding facts that make these items "trade secrets" to be discussed and argued in briefing

8   based on the evidence developed in discovery. Plaintiff need not lay out all of that in the

9   Complaint and, quite frankly, to do so would be a violation of the rules requiring a "short and

10   plain statement of the claim."[39] Plaintiff has met its pleading burden by identifying the specific

11   items that it alleges are trade secrets, which allegations must be taken as true and construed in

12   the light most favorable to Plaintiff.[40]

13

14        **2.**    **Misappropriation of Trade Secrets by All Defendants.**

15         Plaintiff has laid out, in detail, all the communications it is aware of between Defendant

16   4319 and Hollander and Wolfe. Those communications are telling, and would lead anyone

17   applying common sense to conclude that Defendant 4319 was acting as the puppet master over

18   Hollander and Wolfe. As stated above, Hollander and Wolfe were the secret agents of Defendant

19   4319, and Defendant 4319 accessed Plaintiff's system through Hollander and Wolfe. Using

20   common sense, who on God's green earth do we imagine Hollander and Wolfe were working for

21   when they took all the actions described in the Complaint, which were against Plaintiff's interests

22   and to the benefit of Defendant 4319?

23

24

25

26   [38] Id.
   [39] Fed. R. Civ. P. 8(a)(2), (e).

27   [40] See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007); Silvas, 514 F.3d at 1003-04 (9th Cir. 2008).

28

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319     **ZEHNDER LAW LLP**
CONSULTING, INC., ET AL. MOTION TO DISMISS     6625 Wagner Way, Suite 203
COMPLAINT (Cause No. 3:20-cv-05572) -- 15     Gig Harbor, WA 98335
     Telephone: (253) 235-3536

Plaintiff has alleged not only that Defendant 4319 was aware of the wrongful actions being taken, but that Defendant 4319 itself had directly given the instructions to Hollander/Wolfe to take those actions.  This is not speculation.  Plaintiff actually alleges there are such emails by/between Defendant 4319 and Hollander/Wolfe. (See above, sections II.B.7, 9, 10, 12, 13 and 15.)  There can be no doubt the trade secrets were taken by improper means by Defendant 4319's secret agents.

It should be recognized that Plaintiff is <u>not</u> required to allege only direct facts to make its case on misappropriation or otherwise.  Here, the direct facts are in the hands of Defendants.  Under such circumstances, where the direct facts may be "distinctively in" defendant's possession, the Court's focus should shift, thereby "requiring that the threshold standard of plausibility be applied to more circumstantial evidence."[41]  Here, Plaintiff did not baldly allege in the Complaint that Defendants misappropriated Plaintiff's trade secrets.  Instead, Plaintiff alleged compelling direct and circumstantial evidence that should allow this Court to draw the reasonable inference, based on the Court's experience and common sense, that Defendants were involved in a scheme to, and did, engage in the misappropriation of trade secrets and that they made use of them.

Moreover, it is important for the Court to also recognize that the *only reason* Plaintiff was able to uncover the scheme outlined in the facts set forth above is that the Defendants were brazen and foolish enough to perpetrate a portion of their bad acts via/through Plaintiff's own computer system.  This raises a very important point as to the application of the pleading standards set forth in the Supreme Court cases <u>Bell Atlantic Corp. v. Twombly</u> and <u>Ashcroft v. Iqbal</u>.  That is, the "requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition

---

[41] <u>Turbousa</u>, 774 F.3d at 988.

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319 CONSULTING, INC., ET AL. MOTION TO DISMISS COMPLAINT (Cause No. 3:20-cv-05572) -- 16

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

that a plaintiff may only have so much information at his disposal at the outset."[42]  As such, Plaintiff's "pleading burden should be commensurate with the amount of information available to [it]."[43]  One can only imagine what the discovery to be propounded on Defendants will reveal given what the tip of the iceberg has revealed to date (which is precisely why Defendant 4319 makes the herein desperate attempt to prevent discovery).

Drawing upon the direct and circumstantial evidence alleged, the Court should "draw the reasonable inference that [Defendants are] liable for the misconduct alleged."[44]  That is, "common sense borne of real world experience" tells us that Defendant 4319's assertions essentially claiming it has no idea what Plaintiff is claiming here, that it knows nothing, did nothing wrong, had no responsibility for Hollander and Wolfe's conduct, received no trade secrets, and otherwise acted honorable…etc., is proverbial horse dung.[45]  Plaintiff alleges that Hollander and Wolfe accessed Plaintiff's system and stole trade secrets, identified what those trade secrets are, and drew a direct connection to Defendant 4319's involvement in directing the actions of its secret agents.  (See above, sections II.B.7, 9, 10, 12, 13 and 15.)  Set forth next are a few examples pleaded in the Complaint.

First, common sense tells us that Defendant 4319 knew Hollander's and Wolfe's conduct, which it directed, was wrong and breaches of their fiduciary duties to Plaintiff.  Both were employees of Plaintiff at the time of their bad acts, which acts benefitted Defendants and harmed Plaintiff.  (See also, below discussions of breach of fiduciary duty, sections E and F.)

Second, it is not a coincidence that, when Hollander stole trade secrets by creating user names for unauthorized access to Plaintiff's system, the names created are Defendant 4319's

---

[42] Robertson, 679 F.3d at 291.
[43] Bausch, 630 F.3d at 559.
[44] Iqbal, 556 U.S. at 679, 129 S.Ct. 1950.
[45] Germanowski, 854 F.3d at 74-75.

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 17

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

domain name!: "reader@**4319consulting**.com" and "susan@**4319consulting**.com". (¶6.6, 6.7, 20.5 (bold added).)  While foolish and brazen, this screams "secret agent of 4319 Consulting!"

Third, neither was it a cosmic coincidence that, **on the same date** when Parkinson/Defendant 4319 was directing Wolfe to perform work for the benefit Defendant 4319, she used her email account with Plaintiff to transfer trade secrets (relating to hospital credentialing and physician license renewals) to her private email.  (Id.)

Pursuant to the direct and circumstantial facts/circumstances alleged by Plaintiff in the Complaint, and based upon reasonable inferences borne of common sense, the Court should conclude that Plaintiff has sufficiently pleaded that: Plaintiff's trade secrets were stolen on behalf of Defendant 4319, and at its direction, by its "secret agents," and that Defendants received and/or otherwise realized the benefits of those misappropriated trade secrets.

**C.    COMPUTER FRAUD AND ABUSE ACT ("CFAA") PLEADED**
    **1.    Secret "Agents" of Defendant Make Access _Unauthorized._**

Based on all the foregoing discussions, there can be no question that Hollander and Wolfe were acting as the secret agents of Defendant 4319.  It has been held that when secret agents access a party's protected computer and steal trade secrets on behalf of their principal – here Defendant 4319 – they were "without authorization" and, therefore, in violation of CFAA.[46]

This situation is not the broad definition of unauthorized access that was discussed in Brekka, and its progeny, because those cases all involved an employee acting on their own behalf and not as an agent of another.  This is not a situation where the employee would be unable to realize his CFAA violation.[47]  When Hollander and Wolfe accessed the protected computer, it was in reality Defendant 4319 who was doing so.  Hollander, Wolfe and Defendant 4319 all

---

[46] Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1122–25 (W.D. Wash. 2000); 18 U.S.C. § 1030(g).
[47] See LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1133-34 (9th Cir. 2009).

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 18

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone:  (253) 235-3536

knew there was no such authority because Hollander and Wolfe were no longer acting as employees of Plaintiff, they were acting as employees/secret agents of Defendant 4319. As such, Defendant 4319 must be held liable (as should Hollander and Wolfe).[48]

### 2. Defendant 4319/Parkinson Directed The Actions of Its Secret Agents.

Finally, based on the facts stated above and discussed in the sections as to trade secrets, there can be no question that Plaintiff has sufficiently alleged that Defendant 4319 was involved in directing the illegal access to Plaintiff's computers. Once again Defendant 4319 argues, inexplicably, that Plaintiff has not alleged a "single fact connecting" Parkinson/Defendant 4319 to Hollander and Wolfe's actions. Once again Defendant 4319/Parkinson ignores the emails directing that its secret agents Hollander and Wolfe take certain actions and then, <u>simultaneously</u>, Hollander and Wolfe start stealing Plaintiff's trade secret information. Drawing all reasonable inferences based on common sense, and connecting the dots provided by the circumstantial evidence, it is easy to conclude Defendant 4319 was not only "connected" to the bad acts of Hollander/Wolfe, but that Defendant 4319 is guilty itself of CFAA violations having used Hollander and Wolfe to access Plaintiff's computer system – including the unauthorized access names of "reader@**4319consulting**.com" and "susan@**4319consulting**.com"!

### D.    PLAINTIFF STATES A CLAIM FOR RICO VIOLATIONS

Once again Defendant 4319 falsely argues that Plaintiff has failed to allege that Parkinson/Defendant 4319 is connected to wrongful conduct (i.e. theft of trade secrets and wire

---

[48] Defendant 4319 asserts Plaintiff has failed to sufficiently allege $5,000.00 or more in damages to satisfy the CFAA's jurisdictional threshold.  However, investigation costs, including attorneys' fees associated with the investigation of the CFAA violation, count toward the CFAA $5,000.00 requirement.  See NCMIC Fin. Corp. v. Artino, 638 F. Supp. 2d 1042, 1063-66 (S.D. Iowa 2009), modified, No. 4:07-CV00204-JEG, 2009 WL 10669611 (S.D. Iowa Nov. 10, 2009).  Further, it should be noted that Wolfe's HIPAA violations committed in conjunction with the CFAA violation (as pleaded in the Complaint (¶20.5)) can be reasonably inferred to have triggered legal and other investigation costs, reporting requirements, and other harm to Plaintiff.  This Court can take judicial notice that Plaintiff is represented by a private law firm and should reasonably infer, using common sense and experience, that said law firm is not working *pro bono* (we are not).

OPPOSITION BY PLAINTIFF IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) – 19

ZEHNDER LAW LLP
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

fraud, et al. – see above and below discussions).  Once again Defendant 4319 ignores the emails discussed herein.  Parkinson/Defendant 4319 were not only "connected" to said conduct, they directed their secret agents to take these illegal actions.  Moreover, the facts pleaded establish a purpose (i.e. stealing trade secrets, clients and potential clients), a relationship (i.e. Hollander and Wolfe acting as secret agents of Defendant 4319), control and direction by Defendant 4319 over its secret agents, and a plot that extended over at least four months (and it can be reasonably inferred from the facts it started much earlier), which only ended because they got caught.[49] Obviously, as discussed herein, Plaintiff has pleaded multiple racketeering acts (i.e. multiple wire fraud and theft of trade secrets).  Under the pleading standards set forth above, Plaintiff has sufficiently pleaded RICO violations.

## E.    PLAINTIFF STATES CLAIMS FOR TORTIOUS INTERFERENCE

Plaintiff has sufficiently pleaded that Defendants have both intentionally interfered with relationships/expectancies and that it accomplished this through improper means.  Defendant 4319's entire argument, however, is based on the bizarre idea that Plaintiff has alleged neither. First, Defendant 4319 once again pretends it had no involvement with respect to directing the conduct of its secret agents Hollander and Wolfe.  As the foregoing discussions make clear, this idea is absurd.  The actions taken by Hollander and Wolfe constituted actions by Defendant 4319, resulting in the termination of The Phoenix and The Neuromonitoring Group contracts, and delivering them and the business expectancies Spine-Tek and Neuro Alert to Defendant 4319.

Second, Defendants ignore well settled Washington law that an employee's breach of the

---

[49] Defendant 4319 makes the meritless argument that Plaintiff failed to sufficiently allege longevity of the RICO enterprise.  However, RICO requires only "longevity sufficient to permit [the] associates to pursue the enterprise's purpose." In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig., 295 F. Supp. 3d 927, 982 (N.D. Cal. 2018) (citing Boyle v. United States, 556 U.S. 938, 946, 129 S. Ct. 2237, 2244 (2009)). Here the Defendants pursued, and in fact succeeded, in their purpose to commit CFAA violations and steal trade secrets (as well as clients and potential clients).  In fact, the enterprise ended only because they got caught.

OPPOSITION BY PLAINTIFF IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 20

ZEHNDER LAW LLP
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

1    duty of loyalty to an employer, with respect to interfering with the employer's contract rights,

2    constitutes the element of improper means or purpose.[50] Moreover, there can be no question that

3    Hollander's and Wolfe's conduct constitutes a breach of their fiduciary duties given that it is

4    equally well settled that an employee may not solicit customers for a rival business or act in

5    competition with her employer's business.[51] That is exactly what Hollander and Wolfe did here,

6    as secret agents for Defendant 4319, and that constitutes a breach of the duty of loyalty as a

7    matter of law.[52] Plaintiff has shown, repeatedly, Defendant 4319's involvement in those breaches

8    as it directed the actions of its secret agents Hollander and Wolfe. Using Plaintiff's employees

9    in this manner is an improper means.[53]

10

11          Third, ignoring the law and ignoring its' own actions, Defendant 4319 argues there is no

12   reason to believe it knew that Hollander/Wolfe were doing something wrong. What? Apparently

13   Defendant 4319 also is arguing it lacked intent.   Let's see, Defendant 4319 knew

14   Hollander/Wolfe were Plaintiff's employees, knew they were acting as secret agents of

15   Defendant 4319, knew that it was the one directing the secret agents, knew the actions being

16   taken by Hollander/Wolfe were a breach of their duty of loyalty (because one is presumed to

17

18   _____

19   [50] Kieburtz & Assocs., Inc. v. Rehn, 68 Wn. App. 260, 262-64, 266–67, 842 P.2d 985, 988–89 (1992) (employees
     breached duty of loyalty when interfering with plaintiff's contractual rights, thereby constituting improper means

20   making them liable for tort of intentional interference); see also, Keystone Fruit Mktg., Inc. v. Brownfield, 352 F.
     App'x 169, 172 (9th Cir. 2009) ("Washington case law makes clear that by helping design and working to facilitate a

21   client's departure from [his employer] while still in [the employer's] employ, [the employee] 'intentional[ly]
     interfere[d]' for an 'improper purpose' within the meaning of the tortious interference cause of action. See Titus v.

22   Tacoma Smeltermen's Union Local No. 25, 62 Wash.2d 461, 383 P.2d 504, 507–08 (1963).").
     [51] Kieburtz, 68 Wn. App. at 262-64, 266–67 ("During the period of his or her employment, an employee is not 'entitled

23   to solicit customers for [a] rival business...' or to act in direct competition with his or her employer's business. . . . In
     like manner, '[u]nless otherwise agreed, an agent is subject to the duty not to compete with the principal concerning

24   the subject matter of his agency."); Evergreen Moneysource Mortg. Co. v. Shannon, 167 Wn. App. 242, 251, 274 P.3d
     375, 380 (2012).

25   [52] Brownfield, 352 F. App'x at 171-72 (employee soliciting customers for rival business is in breach of duty of loyalty);
     Compuvest Corp. v. Dolinsky, No. C07-1524RAJ, 2009 WL 1604525, at *2 (W.D. Wash. June 5, 2009) (employee

26   soliciting business in competition with its employer is a breach of duty of loyalty as a matter of law).
     [53] Although showing improper means alone is sufficient here, the element of improper means or purpose also can be

27   satisfied by showing the defendant acted with greed. (Moore v. Commercial Aircraft Interiors, LLC, 168 Wash. App.
     502, 509, 278 P.3d 197, 199–202 (2012); Elcon Const., Inc. v. E. Washington Univ., 174 Wash. 2d 157, 169, 273 P.3d
     965, 971 (2012). Here, greed is the only reasonable explanation for Defendant 4319's wrongful conduct.

28   **OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319          **ZEHNDER LAW LLP**
     CONSULTING, INC., ET AL. MOTION TO DISMISS               6625 Wagner Way, Suite 203
     COMPLAINT (Cause No. 3:20-cv-05572) -- 21                Gig Harbor, WA 98335
                                                              Telephone: (253) 235-3536

1    know the law[54]), knew they were stealing clients, potential clients and trade secrets, and knew

2    they succeeded.  Defendant 4319's argument is ludicrous.  Under Washington law, its conduct

3    was knowing and intentional.[55]

4                    **1.      The Phoenix and The Neuromonitoring Group:  Contracts.**

5                Pursuant to Washington law, Plaintiff has sufficiently pleaded the existence of contracts

6    with The Phoenix and The Neuromonitoring Group, that Defendants all had knowledge of those

7    relationships, and that Defendants all interfered with those relationships via an improper means

8    or purpose. [56,57]

9

10                   **2.      Spine-Tek and Neuro Alert:  Business Expectancies.**

11               For all the foregoing reasons, Plaintiff has sufficiently pleaded the existence of valid

12    business expectancies with Spine-Tek and Neuro Alert, that Defendants 4319, Parkinson and

13    Hollander all had knowledge of those expectancies, and that they all interfered with those

14    relationships via improper means or purpose.[58]

15                   **3.      Hollander's and Wolfe's Contractual Relations.**

16               Defendant 4319 directed its secret agents Defendants Hollander and Wolfe to steal

17

18

19   _____

20   [54] Dellen Wood Prod., Inc. v. Washington State Dep't of Labor & Indus., 179 Wn. App. 601, 629; 319 P.3d 847, 861 (2014).

21   [55] Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 158, 52 P.3d 30, 34 (2002), as corrected (Sept. 23, 2002) (Interference with a business expectancy is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.").

22   [56] Kieburtz, 68 Wn. App. 260, 262-64, 266–67, 842 P.2d 985, 988–89 (1992); see also, Brownfield, 352 F. App'x at 172.

23   [57] Defendant 4319 makes up the non-existent requirement that the contract must be alleged to be exclusive, citing nothing in support.  (See Defendant 4319's Moving Brief ("Defendant's Brief"), p. 12, lns. 19-21).  Worse, Defendant

24   4319 then seeks to introduce a new fact that is outside the pleadings – i.e. that Plaintiff terminated the subject contracts. This asserted fact is found nowhere in Plaintiff's complaint (nor supported by declaration, which would be improper

25   on a Fed. R. Civ. P. 12(b)(6) motion). (See Defendant Brief, p. 12, fn. 8.)  **Plaintiff moves to strike said footnote pursuant to LCR 7(g) because the Court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6)**

26   **is limited to the complaint.**  Nw. Home Designing Inc. v. Sound Built Homes Inc., 776 F. Supp. 2d 1210, 1214 (W.D. Wash. 2011).

27   [58] Newton, 114 Wn. App. 151 at 158; see also, Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 767–76, 436 P.3d 397, 405–09, review denied, 193 Wash. 2d 1023, 448 P.3d 64 (2019).

28   _____

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319            **ZEHNDER LAW LLP**
CONSULTING, INC., ET AL. MOTION TO DISMISS              6625 Wagner Way, Suite 203
COMPLAINT (Cause No. 3:20-cv-05572) -- 22               Gig Harbor, WA 98335
                                                        Telephone:  (253) 235-3536

Plaintiff's clients, prospective clients and trade secrets. Defendant 4319 knew its secret agents were employees of Plaintiff. Hollander's and Wolfe's acting as secret agents, and stealing as discussed above and in the Complaint, <u>constitutes a breach of their fiduciary duties to Plaintiff.</u> Defendant 4319 is presumed to know the law, thus, it knew their conduct was a breach of their fiduciary duties to Plaintiff. This is tortious interference of even an "at will" employment contract.[59] Of course, once again, Defendant 4319 ignores that fact, and pretends it had no involvement in its secret agents' conduct.

### F.    DEFENDANT 4319 AIDS AND ABETS BREACH OF FIDUCIARY DUTY

As with every other claim, Defendant 4319 ignores the facts actually alleged in the Complaint. Defendant 4319 admits Plaintiff need only allege that it knew Hollander's/Wolfe's conduct constituted a breach of their fiduciary duties and that it gave encouragement to do so. (See, Defendant's Brief, p. 15, lns. 10-13.) As set forth above, there can be no question that Defendant 4319's conduct in directing its secret agents would constitute breaches of their fiduciary duties to Plaintiff, and that the emails described in the Complaint provide sufficient direct and circumstantial evidence to allow the Court to reasonably infer, and use its common sense and experience, to conclude Defendant 4319 aided and abetted Hollander and Wolfe in those breaches.

### G.    PLAINTIFF STATES CLAIM FOR CONSPIRACY

At the risk of sounding like a broken record, once again Defendant 4319's entire argument is based on ignoring the facts actually alleged in the Complaint and pretending as if it cannot connect the dots. Defendant 4319 asserts there are no facts that it: 1) combined with anyone to accomplish an unlawful purpose, or lawful purpose by unlawful means; and/or 2) entered into

---

[59] <u>Albert's Organics, Inc. v. Holzman</u>, 445 F. Supp. 3d 463, 477–79 (N.D. Cal. 2020).

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 23

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536

1   an agreement.  Applying the pleading standards discussed at the outset of this brief, the Court

2   should once again draw all reasonable inferences based on its common sense and experience

3   when looking at the direct and circumstantial evidence pleaded in the Complaint.  This should

4   allow the Court to readily connect the dots that Defendant 4319 pretends it cannot connect.

5   Plaintiff has sufficiently alleged that Defendant 4319 combined with Hollander and Wolfe to

6   steal Plaintiff's property and gain illegal access to its protected computer (i.e. unlawful purpose),

7   that this was done through breaches of the employees' fiduciary duties as secret agents taking

8   direction from Defendant 4319 (i.e. unlawful means), and that this was all pursuant to a secret

9   agreement between them.  This is easily sufficient to plead conspiracy under Ninth Circuit law.[60]

10

11  **IV.    CONCLUSION**

12          For all the foregoing reasons, Plaintiff NW Monitoring LLC respectfully requests that the

13  Court deny Defendants' Motions to Dismiss in their entirety.  (If Defendants' motions are not

14  denied in their entirety, Plaintiff requests that it be granted leave to amend.)

15

16

17  **Dated:  September 8, 2009**                    **ZEHNDER LAW LLP**

18

19                                                 By:
                                                   John E. Zehnder, Jr., WSBA #29440
20                                                 Joseph P. Zehnder, WSBA #28404
                                                   ZEHNDER LAW LLP
21                                                 6625 Wagner Way, Suite 203
                                                   Gig Harbor, WA 98335
22                                                 Phone: 253-235-3536
                                                   johnz@zehnderllp.com
23                                                 joez@zehnderllp.com
                                                   **Attorneys for Plaintiff NW**
24                                                 **Monitoring LLC**

25

26

27  [60] In re Glumetza Antitrust Litig., No. C 19-05822 WHA, 2020 WL 1066934, at *9 (N.D. Cal. Mar. 5, 2020).

28  ┌─────────────────────────────────────────────────────────────────────────────
    **OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319        **ZEHNDER LAW LLP**
    CONSULTING, INC., ET AL. MOTION TO DISMISS            6625 Wagner Way, Suite 203
    COMPLAINT (Cause No. 3:20-cv-05572) -- 24             Gig Harbor, WA 98335
                                                          Telephone:  (253) 235-3536

## DECLARATION OF SERVICE

The undersigned declares under the penalty of perjury under the laws of the State of Washington that I am a citizen of the United States, a resident of the State of Washington, over the age of eighteen years, not a party or interested in the above-entitled action, and competent to be a witness herein. On the date given below, I caused to be served via the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the foregoing document to:

**Perkins Coie LLP**
David A. Perez, Esq. WSBA No. 43959
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206-359-8000
DPerez@perkinscoie.com
*Attorney for Defendants Jeffery D. Parkinson and 4319 Consulting, Inc.*

**YOUNGLOVE & COKER, P.L.L.C.**
Gregory M. Rhodes, Esq. WSBA No. 33897
1800 Cooper Point Road SW, Bldg. 16
PO Box 7846 Olympia, WA 98507-7846
Telephone: 360-357-7791
grhodes@ylclaw.com
Paralegal : Angie Dowell
angie@ylclaw.com
*Attorney for Defendant Charlene Wolfe*

**BEAN LAW GROUP**
Matthew J. Bean, Esq. WSBA No. 23221
Cody Fenton-Robertson, Esq. WSBA No. 47879
2200 6th Avenue, Suite 500
Seattle, WA 98121
Telephone: 206-522-0618
matt@beanlawgroup.com
cody@beanlawgroup.com
*Attorneys for Defendant Susan L. Hollander*

Signed at Gig Harbor, Washington this ⟨⟩ day of September 2020.

ZEHNDER LAW LLP

By: *Rebecca M. Williams*
Rebecca M. Williams

---

**OPPOSITION BY PLAINTIFF** IN RESPONSE TO 4319
CONSULTING, INC., ET AL. MOTION TO DISMISS
COMPLAINT (Cause No. 3:20-cv-05572) -- 25

**ZEHNDER LAW LLP**
6625 Wagner Way, Suite 203
Gig Harbor, WA 98335
Telephone: (253) 235-3536