1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NW MONITORING LLC,

          Plaintiff,

      v.

SUSAN L. HOLLANDER, et al.,

          Defendants.

CASE NO. C20-5572 RSM

ORDER PARTIALLY GRANTING
MOTIONS TO DISMISS

## I.    INTRODUCTION

This matter is before the Court on two motions to dismiss and two notices of joinder wherein all defendants seek dismissal of some, or all, of Plaintiff NW Monitoring LLC's many claims.[1]  Plaintiff NW Monitoring LLC's claims, against two former employees and two business competitors, vary from misappropriation of trade secrets, computer fraud and abuse, racketeering, interference with contractual relationships and business expectancies, breach of the duty of loyalty, breach of contract, and numerous civil conspiracies.  *See generally* Dkt. #1. Defendants 4319 Consulting, Inc. and Jeffery D. Parkinson—the competitors—seek dismissal of

---

[1] In addition to the individual defendants to be addressed in this Order, Plaintiff NW Monitoring LLC's complaint named spouses Jane Doe Parkinson, John Doe Hollander, and John Doe Wolfe to address community property concerns. Dkt. #1 at ¶¶ 4.2–4.5. Following the parties' lead, the Court does not address spouses or the marital communities separately.

ORDER – 1

all Plaintiff NW Monitoring LLC's claims against them.[2]  Dkt. #13.  Defendant Susan L. Hollander, a past employee, seeks dismissal of claims under RICO and claims related to the misappropriation of trade secrets and computer fraud.[3]  Dkt. #16.  Defendant Charlene Wolfe, also a past employee, joins the motions to dismiss to the extent any successful arguments may apply to her as well, but makes no individualized argument for dismissal.  Dkt. #17 and #18. Plaintiff NW Monitoring responds, arguing that it has sufficiently alleged all of its claims and that dismissal is not warranted.  Dkt. #19.  Defendants have further replied in support of their arguments. Dkts. #22 and #23.  Having considered the issues and the briefing, the Court grants the motions in part, for the following reasons.

## II.      BACKGROUND

### A.  Factual Background

Plaintiff NW Monitoring LLC ("NW Monitoring") "provides intraoperative neuromonitoring and intraoperative oversight services throughout the United States." Dkt. #1 at ¶ 5.1.  NW Monitoring employed Defendant Susan L. Hollander ("Hollander") as its Chief Medical Officer and Defendant Charlene Wolfe ("Wolfe") as its Credentialing Manager.  *Id.* at ¶¶ 5.4–5.5.  Defendant 4319 Consulting, Inc. ("4319 Consulting") and its sole shareholder Defendant Jeffery D. Parkinson ("Parkinson") (collectively, with 4319 Consulting, the "Parkinson Defendants") directly compete with NW Monitoring for business.  *Id.* at ¶ 5.7.

//

---

[2] 20 of Plaintiff NW Monitoring's 22 claims are brought against Defendants 4319 Consulting, Inc. and Jeffery D. Parkinson.  *See* Dkt. #1 (Claims 1–16 and 19–22).

[3] Defendant Susan L. Hollander does not seek dismissal of claims for breach of contract, breach of the duty of loyalty, intentional interference with contractual relationships and business expectancies, and related conspiracies.  Dkt. #16 (challenging claims 1–10 and indicating that Defendant Susan L. Hollander "does not seek dismissal of the remaining counts").

ORDER – 2

This case arises out of Hollander's transition from employment with NW Monitoring to employment with 4319 Consulting. NW Monitoring alleges broadly that while Hollander and Wolfe were still employed by NW Monitoring, they conspired with the Parkinson Defendants to illegally deprive NW Monitoring of customers and business expectancies, trade secrets, and employees, thereby damaging NW Monitoring's business. *Id.* at ¶¶ 5.6–5.8. Specifically, NW Monitoring alleges misappropriation of trade secrets arising from Wolfe emailing "information related to hospital credentialing and physician license renewals" from NW Monitoring to her personal email and later using that information for Parkinson Defendants' benefit. *Id.* at ¶ 6.3. As to Hollander's misappropriation, NW Monitoring primarily alleges that she created unauthorized user accounts allowing her and the Parkinson Defendants to later access "electronic medical records and customer pricing information" on NW Monitoring's protected computer system. *Id.* at ¶ 6.6. Additionally, NW Monitoring alleges that Hollander interfered in business relationships, stealing two NW Monitoring customers on the way out and diverting two more new clients away from their interest in NW Monitoring and to Parkinson Defendants. *Id.* at ¶ 20.5.

**B. Procedural Background**

On the basis of these allegations, NW Monitoring asserted numerous claims for violations of federal law under the Defend Trade Secrets Act ("DTSA"),[4] the Computer Fraud and Abuse Act ("CFAA"),[5] and the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[6]

---

[4] 18 U.S.C. § 1832 et seq.

[5] 18 U.S.C. § 1030(g).

[6] 18 U.S.C. §§ 1962(c), 1964(c).

ORDER – 3

violations of state law under Washington's Uniform Trade Secrets Act ("WUTSA"),[7] and claims for intentional interference with contractual relations, tortious interference with a business expectancy, breaches of the duty of loyalty, breaches of contracts, and civil conspiracies. Defendants seek dismissal of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.    DISCUSSION

### A. Legal Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P. 8(a)(2). While considering a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The court is not required, however, to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The complaint need not include

---

[7] Title 19.105 WASH. REV. CODE.

ORDER – 4

1   detailed allegations, but it must have "more than labels and conclusions, and a formulaic

2   recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "The

3   plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

4   possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are

5   merely consistent with a defendant's liability, it stops short of the line between possibility and

6   plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556,

7   557).  Absent facial plausibility, a plaintiff's claims must be dismissed.

8   **B.  Federal and State Trade Secret Misappropriation Claims (Counts 1–2, and 9–10)**

9           Defendants' primary contention with NW Monitoring's trade secret misappropriation

10  claims is that NW Monitoring has not adequately identified the trade secrets at issue.  Dkt. #13

11  at 9;[8] Dkt. #16 at 5.  A claim under the WUTSA requires a plaintiff to plead (1) the existence of

12  a protectable trade secret, and (2) facts constituting misappropriation.  *MUFG Union Bank, N.A.*

13  *v. Tyler*, Case No. 17-cv-1766-RSM, 2018 WL 2046290, at *3 (W.D. Wash. May 2, 2018)

14  (citations omitted).   The definition of a trade secret is broad.   *See* WASH. REV. CODE

15  § 19.108.010(4) (indicating that a trade secret is "information, including a formula, pattern,

16  compilation, program, device, method, technique, or process").  But the trade secret must derive

17  "independent economic value, actual or potential, from not being generally known" and must be

18  protected by reasonable efforts.  *Id.*  A defendant may be held liable for misappropriation where

19  the defendant disclosed or used a trade secret, without express or implied consent, while knowing

20  or having reason to know the secrecy of the trade secret.  WASH. REV. CODE § 19.108.010(2).

21  Claims under the federal DTSA are substantially similar.  *See* 18 U.S.C. § 1839; *Philips N. Am.,*

22

23

24  [8] Throughout, the Court cites to the docket and page numbers applied by the Court's CM/ECF
    system.  Where appropriate, the Court cites to numbered paragraphs or page and line numbers.

ORDER – 5

1  *LLC v. Summit Imaging Inc.*, Case No. 19-cv-1745-JLR, 2020 WL 1515624, at *5 (W.D. Wash.

2  Mar. 30, 2020).

3          1.  **Identification of Trade Secrets**

4          NW Monitoring's complaint identifies the alleged trade secrets as "hospital credentialing

5  information, physician license renewal information, and customer pricing information." Dkt. #1

6  at ¶ 6.2.  More specifically, NW Monitoring alleges that Wolfe emailed herself "trade secret

7  information related to hospital credentialing and physician license renewals." *Id.* at ¶ 6.3.  As to

8  Hollander, NW Monitoring alleges that she accessed protected computer systems containing

9  "electronic medical records and customer pricing information," and created two unauthorized

10  user accounts associated with a "4319consulting.com" domain name. *Id.* at ¶ 6.6.  Further, NW

11  Monitoring alleges that "Hollander, 4319 Consulting, and Parkinson accessed NW Monitoring's"

12  protected computer system after the accounts were created. *Id.* at ¶ 6.7.

13          Defendants argue that these general allegations are not sufficient to put them on notice of

14  the trade secrets at issue.  Specifically, defendants argue that "[p]art of sufficiently stating a claim

15  for trade secret misappropriation is sufficiently identifying the alleged trade secrets and showing

16  that they existed." Dkt. #13 at 9 (quoting *Digital Mentor, Inc. v. Ovivo USA, LLC*, Case No. 17-

17  cv-1935-RAJ, 2018 WL 6724765, at *8 (W.D. Wash. Dec. 21, 2018)); *see also* Dkt. #16 at 5

18  (citing *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)).  But the Court

19  finds defendants' arguments unavailing.

20          "[T]he determination in a given case whether specific information is a trade secret is a

21  factual question." *Multifab, Inc. v. Zweiger*, Case No. 19-cv-6164-BHS, 2020 WL 2614736, at

22  *3 (W.D. Wash. May 22, 2020) (quoting *Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427,

23  436, 971 P.2d 936, 941 (1999) (en banc) (citations omitted)).  At this stage in the case, the Court

24  is faced with a question of law: "whether a particular *type or format* of information is protected."

ORDER – 6

1   *Id.* (citing *Nowogroski Ins., Inc.*, 137 Wash. 2d at 436, 971 P.2d at 941) (emphasis added).  Thus,

2   the appropriate question is whether "hospital credentialing information," "physician license

3   renewal" information, "electronic medical records[,] and customer pricing information" can ever

4   constitute trade secrets.

5           While evidence may lead to a different factual conclusion, at the pleading stage, the

6   answer is that NW Monitoring has clearly alleged a protectable trade secret in at least its customer

7   pricing information.  *Nowogroski Ins., Inc.*, 137 Wash. 2d at 440–50, 971 P.2d at 943–49

8   (concluding that a customer list, whether written or memorized, constituted protectable trade

9   secret).[9]  Defendants' reliance on *Digital Mentor, Inc.* to argue otherwise is misplaced.  There,

10  the trade secrets alleged by plaintiff were only nondescript "designs," "processes," "algorithms,"

11  and "modules."  *Digital Mentor, Inc.*, 2018 WL 6724765, at *8.  The Court finds those generic

12  descriptions are quite distinct from NW Monitoring's allegations in this case.

13          Hollander, a doctor, makes a somewhat convincing argument that her "hospital

14  credentialing information" cannot possibly constitute a trade secret because she has personal

15  knowledge of her credentialing information. Dkt. #16 at 5; Dkt. #22 at 6–7.  But Hollander's

16  knowledge of base information does not mean that all form of the same information are not

17  protectable trade secrets.  *See United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) *cert.*

18  *denied*, 138 S. Ct. 314 (2017)) (noting that the manner in which the information was compiled

19  or the selection of information to retain could turn public information into a proprietary trade

20  secret) ("*Nosal II*").  Factual challenges may remain, but the allegations are sufficient to state a

21  claim.

22

23  ───────────────────────

    [9] The Court notes the numerous allegations NW Monitoring has made that defendants accessed
24  customer pricing information.  *See e.g.* Dkt. #1 at ¶¶ 5.6, 5.8, 6.2, 6.6.  Discussion of these
    allegations was conspicuously absent from defendants' briefing.

ORDER – 7

2.   **Misappropriation of Trade Secrets**

The Court further concludes that NW Monitoring has adequately alleged misappropriation of its trade secrets.  NW Monitoring alleges that Wolfe, near the end of her employment with NW Monitoring, moved hospital credentialing information from NW Monitoring to her private email and later performed credentialing services for Parkinson Defendants.  Dkt. #1 at ¶¶ 6.3, 20.5.e.  NW Monitoring also alleges that Hollander created user accounts for NW Monitoring's protected computer systems associated with a "4319 Consulting" domain name and later accessed NW Monitoring's protected computer systems with Parkinson Defendants.  *Id.* at ¶¶ 6.6–6.7.

Defendants fault NW Monitoring's allegations as nonspecific.  But the Court does not expect NW Monitoring to know all of the relevant facts surrounding defendants' misappropriation at this stage of the proceedings.  NW Monitoring's allegations state a plausible case for misappropriation.  For instance, Hollander argues that even if she created user accounts associated with a "4319 Consulting" domain, NW Monitoring cannot allege that she actually accessed the information on its protected computer systems.  Dkt. #22 at 8.  But the facts alleged lead to the inference that Hollander and Wolfe each believed NW Monitoring's trade secrets would be beneficial to their work for Parkinson Defendants and accessed the trade secrets to the benefit of Parkinson Defendants.  Further, NW Monitoring alleges that Hollander accessed customer pricing information, emailed NW Monitoring customers to explain "how the relationship would work" once she was working for Parkinson Defendants, and succeed in having two of NW Monitoring's existing customers become Parkinson Defendants' customers.  Dkt. #1 at ¶¶ 5.2, 5.3 16.2–16.8, 20.5.f.  These allegations give rise to the reasonable inference that Hollander's knowledge of NW Monitoring's customer pricing was able to offer existing NW Monitoring customers a more attractive pricing model with 4319 Consulting.

Lastly, the Court finds that NW Monitoring's allegations are sufficient to state a plausible claim against the Parkinson Defendants despite limited allegations related to Parkinson Defendants' actions. First, NW Monitoring alleges that the Parkinson Defendants "directly or indirectly aided, assisted, abetted, advised, encouraged, or counseled" both Wolfe and Hollander in their misappropriation of NW Monitoring's trade secrets. *Id.* at ¶¶ 6.5, 6.9. These allegations strike the Court as somewhat conclusory and are based upon information and belief, but the allegations are sufficient in light of NW Monitoring's additional allegations. *See nexTUNE, Inc. v. McKinney*, Case No. 12-cv-1974-TSZ, 2013 WL 5211778, at *3 (W.D. Wash. Sept. 17, 2013) (information and belief allegations can support misappropriation where additional facts support adequate inferences). Here, NW Monitoring does not allege only that Parkinson Defendants hired Wolfe and Hollander. *C.f.* Dkt. #13 at 6 (asserting that Parkinson Defendants' "involvement in this case extends no further than a business hiring a new employee"). Instead, NW Monitoring alleges that Wolfe was performing credentialing work for Parkinson Defendants at the time she was emailing trade secret information to her personal email address and that at least part of the actions taken were at the direction of the Parkinson Defendants. Dkt. #1 at ¶¶ 20.5.c, .h. This clear instance, combined with additional allegations related to Hollander's actions on behalf of Parkinson Defendants, gives rise to the reasonable inference that Hollander's and Wolfe's actions were similarly taken at the direction of Parkinson Defendants and for their benefit. The Court finds the NW Monitoring's trade secret claims plausible.

### 3. Conspiracy (Counts 2 and 10)

The Court finds, however, that NW Monitoring has failed to adequately state a claim for conspiracy to misappropriate trade secrets. While definitive answers are lacking, the weight of authority tips against the viability of conspiracy claims based on misappropriation of trade secrets under the DTSA. *See Genentech, Inc. v. JHL Biotech, Inc.*, Case No. 18-cv-06582-WHA, 2019

ORDER – 9

WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019) (agreeing that 18 U.S.C. § 1832(a)(5), which criminalizes conspiracy to violate the DTSA, does not provide a private right of action) (citing *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 840–44 (E.D. Va. 2017) (same)).

Similarly, the prevailing view is that the WUTSA preempts any common law claims for conspiracy to misappropriate trade secrets.  *See Inteum Co., LLC v. Nat'l Univ. of Singapore*, Case No. 17-cv-1252-JCC, 2018 WL 2317606, at *2 (W.D. Wash. May 22, 2018).  In *Inteum Co.* the Court noted "strong" and "weak" forms of preemption and that this Court has "predicted that the Washington Supreme Court would embrace [the strong] approach." *Id.* (citing *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1199 (W.D. Wash. 2015) (collecting cases applying Washington law); *Int'l Paper Co. v. Stuit*, Case No. 11-cv-2139-JLR, slip op. at 8 (W.D. Wash. May 21, 2012) ("the weight of authority has tipped away from" the view that common law claims are not preempted *if* the claims require additional elements)). Under the applicable "strong" form, "a plaintiff 'may not rely on acts that constitute trade secret misappropriation to support [another cause] of action' even if it requires proof of additional elements." *Inteum Co., LLC*, 2018 WL 2317606, at *2 (quoting *T-Mobile USA, Inc.*, 115 F. Supp. 3d at 1198) (citing *Thola v. Henschell*, 164 P.3d 524, 530 (Wash. Ct. App. 2007)).  Plaintiff does not allege facts separately supporting a conspiracy to misappropriate trade secrets and the claim is therefore preempted by the WUTSA.  The Court dismisses both conspiracy claims.

**C.  Computer Fraud and Abuse Claims (Counts 3–6)**

As an initial matter, NW Monitoring does not specify which subsection of 18 U.S.C. § 1030(a) it proceeds under.[10]  Regardless, the United States Court of Appeals for the Ninth Circuit has succinctly summarized the portions of the CFAA most likely to apply:

---

[10] Paragraph 8.2 of NW Monitoring's complaint appears to track 18 U.S.C. § 1030(a)(2)(C). Paragraph 8.3 of NW Monitoring's complaint appears to track 18 U.S.C. § 1030(a)(4).

1         The CFAA prohibits acts of computer trespass by those who are not
2    authorized users or who exceed authorized use.  It creates criminal and civil
     liability for whoever "intentionally accesses a computer without authorization or
3    exceeds authorized access, and thereby obtains . . . information from any
     protected computer." 18 U.S.C. § 1030(a)(2)(C).  "The statute thus provides two
4    ways of committing the crime of improperly accessing a protected computer: (1)
     obtaining access without authorization; and (2) obtaining access with
5    authorization but then using that access improperly." *Musacchio v. United States*,
     [577 U.S. 237, 239] (2016).  The CFAA provides a private right of action for
6    "[a]ny person who suffers damage or loss by reason of a violation of this section."
     18 U.S.C. § 1030(g).

7  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065–66 (9th Cir. 2016).

8       Under this framework, NW Monitoring's CFAA claims against both Wolfe and

9  Hollander fail.  First, NW Monitoring does not allege—beyond conclusory assertions—that

10  Wolfe and Hollander lacked authorization to access NW Monitoring's computers.  *hiQ Labs, Inc.*

11  *v. LinkedIn Corp.*, 938 F.3d 985, 999–1000 (9th Cir. 2019) ("We have held in another context

12  that the phrase '"without authorization" is a non-technical term that, given its plain and ordinary

13  meaning, means accessing a protected computer without permission.'") (quoting *Nosal II*, 844

14  F.3d at 1028–29).  While NW Monitoring argues that any authorization ceased because Wolfe

15  and Hollander were "working for" Parkinson Defendants at the time of access, Dkt. #19 at 26–

16  27, the law requires *express* revocation of previously granted authorization.  *Facebook, Inc. v.*

17  *Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (one authorized to access a computer

18  subsequently accesses the computer "without authorization" only "when the employer has

19  rescinded permission to access the computer and the defendant uses the computer anyway")

20  (citations omitted); *see also Domain Name Comm'n Ltd. v. DomainTools, LLC*, 449 F. Supp. 3d

21  1024, 1029 (W.D. Wash. 2020) ("Permission or authorization to access a computer does not

22  evaporate simply because the user has violated a duty owed to the owner of the computer.")

23  (citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134–35 (9th Cir. 2009)).

24

ORDER – 11

Second, NW Monitoring does not state a claim under the CFAA by alleging that Wolfe or Hollander exceeded their authorized access.  The Ninth Circuit has explained that the "exceeds authorization" prong of the CFAA applies to individuals "whose initial access to a computer is authorized but who access unauthorized information or files." *DomainTools*, 449 F. Supp. 3d at 1029 (citing *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) ("*Nosal I*")).[11]  In so concluding, the Ninth Circuit held that the CFAA does not target the "misuse or misappropriation" of information.  *Nosal I*, 676 F.3d at 858 (quoting *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008)).  Because NW Monitoring does not allege that Wolfe of Hollander accessed information they were not authorized to access, its claims under the CFAA against Wolfe and Hollander fail and are dismissed.

The Court further concludes that NW Monitoring's CFAA allegations as to Parkinson Defendants must fail.  NW Monitoring does not point to any authority showing that Parkinson Defendants may be held liable for unauthorized access based on incidences of authorized access by Wolfe and Hollander.  NW Monitoring does broadly allege that Parkinson Defendants accessed its computer systems without authorization.  *See* Dkt. #1 at ¶ 8.2.  However, NW Monitoring does not plead additional facts to make it plausible as opposed to merely possible that Parkinson Defendants themselves accessed NW Monitoring's computer system.  This contrasts directly with NW Monitoring's additional allegations allowing the Court to infer that Wolfe and Hollander were working with or on behalf of Parkinson Defendants in misappropriating trade secrets.  The Court dismisses the claims.

---

[11] Plaintiff cites to *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wash. 2000), to support its argument that Wolfe and Hollander can be considered "secret agents" of Parkinson Defendants, making their access unauthorized. Dkt. #19 at 26 n.46. But *Shurgard* clearly conflicts with later Ninth Circuit opinions, calling into question its reasoning and its value as precedent.

ORDER – 12

Lastly, NW Monitoring's conspiracy claims fail in regard to its CFAA allegations because it has failed to adequately allege an actionable underlying act or claim under the CFAA. *See Nw. Laborers-Emps. Health & Sec. Tr. Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d 1211, 1216 (W.D. Wash. 1999) ("In Washington . . . a civil conspiracy claim must be premised on underlying 'actionable wrongs,' 'overt acts,' or a 'tort working damage to the plaintiffs. A conspiracy claim fails if the underlying act or claim is not actionable.") (citations omitted). NW Monitoring's conspiracy claims premised on violations of CFAA are dismissed.

### D. RICO Claims (Counts 7–8)

Defendants argue persuasively against the sufficiency of NW Monitoring's RICO claims while NW Monitoring provides little in defense of the claims. To successfully state a claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmet v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). Several deficiencies plague NW Monitoring's RICO claims.

First, NW Monitoring does not adequately allege the existence of an enterprise. *See U.S. v. Turkette*, 452 U.S. 576, 583 (1981) (noting that an "enterprise" is an entity or "group of persons associated together for a common purpose of engaging in a course of conduct"); Dkt. #1 at ¶ 12.2 (merely alleging that defendants "were associated with an enterprise"). The Court can infer that NW Monitoring intends for the defendants to collectively form the enterprise. But an enterprise must have more, including "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). More importantly, the enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. Here, NW Monitoring appears to do nothing but allege that the enterprise is the association of

ORDER – 13

1   individuals involved in the predicate acts.   The complaint's simplified allegations are not

2   sufficient to state a claim under RICO.

3        Second, the Court also notes that NW Monitoring failed to adequately allege a pattern of

4   racketeering activity.   "[T]he term 'pattern' itself requires the showing of a relationship between

5   the predicates and of the threat of continuing activity."   *Howard v. Am. Online Inc.*, 208 F.3d

6   741, 746 (9th Cir. 2000) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239

7   (1989).   Quite simply, "[a]ctivity that lasts only a few months is not sufficiently continuous."

8   *Id.* at 750 (citing *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1528 (9th Cir.1995); *Religious Tech. Ctr.*

9   *v. Wollersheim*, 971 F.2d 364, 366 n.4 (9th Cir.1992)).   NW Monitoring's RICO claims also fail

10  on this deficiency.

11       These readily identifiable pleading deficiencies, in concert with the additional reasons

12  detailed in defendants' motions,[12] require dismissal of NW Monitoring's RICO claims.   Because

13  the underlying RICO claims fail, the Parkinson Defendants note, NW Monitoring is also

14  precluded from alleging a conspiracy to violate RICO.   *See* Dkt. #13 at 16 n.7 (citing *Howard*,

15  208 F.3d at 751 ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not

16  adequately plead a substantive violation of RICO.")).

17       Perhaps recognizing the deficiencies, NW Monitoring does little to support its claims on

18  defendants' motions to dismiss.   See Dkt. #19 at 27–28 (single paragraph merely reasserting

19  complaints allegations and arguing, without legal support, that the allegations are sufficient).   The

20  Court additionally takes the lack of substantive response as an admission that defendants'

21  motions have merit.   *See* LOCAL RULES W.D. WASH. LCR 7(b)(2) ("Except for motions for

22  summary judgment, if a party fails to file papers in opposition to a motion, such failure may be

23

24  ---
[12] *See* Dkt. #13 at 14–16; Dkt. #16 at 7.

ORDER – 14

considered by the court as an admission that the motion has merit."). NW Monitoring's RICO claims are accordingly dismissed with prejudice.

### E. Tortious Interference Claims and Conspiracies (Counts 11–14, and 19–22)

NW Monitoring alleges that some or all of the defendants interfered with its contracts with its existing customers, business expectancies, and its employee contracts. Parkinson Defendants and Wolfe seek dismissal of NW Monitoring's claims.[13]  *See* Dkt. #16 at 4. Under Washington law, NW Monitoring's tortious interference claims require:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 351, 144 P.3d 276, 280 (2006) (quoting *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wash. 2d 133, 157, 930 P.2d 288 (1997)). The Court addresses each category of claim in turn.

### 1. Interference with Existing Customers (Count 11)

NW Monitoring first alleges that all defendants tortiously interfered with its contractual relationships with The Neuromonitoring Group and The Phoenix (the "Existing Customers") to provide intraoperative oversight services. Dkt. #1 at ¶¶ 16.2–16.3. The Court first notes that NW Monitoring baldly alleges, in a conclusory fashion, the elements of a tortious interference claim. *Id.* at ¶¶ 16.2–16.7. Nevertheless, Plaintiff incorporates, and the Court is to consider, the additional allegations of the complaint and provides additional detail. Most relevant here are NW Monitoring's allegations that Hollander first agreed to employment with 4913 Consulting

---

[13] Because Wolfe has not made any individualized arguments as to why NW Monitoring's claims fail to state a claim against her, the Court is unable to conclude that NW Monitoring fails to state its various tortious interference claims as to Wolfe. Unless otherwise noted, the Court denies dismissal of the claims against Wolfe.

ORDER – 15

and then, while still working for NW Monitoring, used her NW Monitoring account to email the Parkinson Defendants and the Existing Customers to discuss their transition to 4319 Consulting. *Id.* at ¶ 20.5.f.  These allegations give rise to the clear inference that prior communications among these parties had occurred, that an agreement was likely already in place for the transfer of business to 4319 Consulting, and that Parkinson Defendants were involved or aware of Hollander's interactions.

In light of the stage of the litigation, the Court again finds the allegations sufficient to state a claim.  Plaintiff's allegations give rise to the inference that Parkinson Defendants and Hollander discussed the possibility that Hollander could attract customers to leave NW Monitoring and begin working with 4319 Consulting in the course of their employment negotiations.  Further, it is reasonable to infer that Parkinson Defendants' involvement in Hollander's actions was intentional as Hollander performed the work for the benefit of Parkinson Defendants prior to the beginning of her work for Parkinson Defendants.  More detailed determinations, such as intent, may wait for later stages of this proceeding.  The Court declines the request to dismiss this claim.

### 2.  Business Expectancies (Count 13)

NW Monitoring also alleges that Hollander and Parkinson Defendants tortiously interfered with its business expectancies associated with potential customers Neuro Alert and Spine-Tek (the "Business Expectancies").  *Id.* at ¶¶ 18.1–18.7.  Upon consideration, the Court finds the allegations sufficient to state a claim.

Similar to the existing customers claims, the timing of events gives rise to inferences supporting NW Monitoring's business expectancy claims.  Hollander received inquiry from the Business Expectancies in 2019 about the Business Expectancies' desire to work with NW Monitoring.  *Id.* at ¶ 18.2.  Hollander did not disclose these potential customers to NW

Monitoring.  *Id.* at ¶ 18.4.  Then, after agreeing to work for 4319 Consulting and providing NW Monitoring a letter or resignation, Hollander emailed the Business Expectancies and Parkinson Defendants to solicit the Business Expectancies to become customers of 4319 Consulting.  *Id.* at ¶¶ 18.4–18.5.

### 3.  Contractual Relationships (Counts 19 and 21)

NW Monitoring alleges that Parkinson Defendants similarly joined with Wolfe to intentionally interfere with Hollander's employment contract and with Hollander to intentionally interfere with Wolfe's employment contract.  *Id.* at ¶¶ 24.1–24.9, 26.1–26.9.  Upon consideration, the Court finds the allegations sufficient to state a claim and denies dismissal.

Once again, NW Monitoring's allegations give rise to inferences adequately supporting its claims at this stage.  Here, and with regards to Hollander, Hollander no doubt knew of her contractual obligations and discussed the issue with Parkinson.  NW Monitoring further alleges that Hollander and Parkinson Defendants conspired to interfere with its business customers and convert them to customers of Parkinson Defendants.  This gives rise to an inference of improper motive sufficient to state a claim at this stage of the proceedings.[14]  Similarly, NW Monitoring's allegations related to Wolfe's employment contract are likewise sufficient at this stage.

### 4.  Conspiracy (Counts 12, 14, 20, and 22)

A claim for civil conspiracy requires that a plaintiff prove, "by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy."  *Wilson v. State*, 84 Wash. App.

---

[14] NW Monitoring's allegations as to Wolfe's involvement are perhaps lacking, but Wolfe has not submitted argument specific to the allegations against her.

ORDER – 17

332, 350–51, 929 P.2d 448, 459 (1996) (citing *Corbit v. J.I. Case Co.,* 70 Wash.2d 522, 528–29, 424 P.2d 290 (1967)).

Here, the Court concludes that NW Monitoring adequately pleads concurrent conspiracy claims related to the tortious interference with NW Monitoring's Existing Customers and Business Expectancies. Parkinson Defendants are certainly correct that NW Monitoring's conspiracy claims are stated in broad and conclusory allegations. *See* Dkt. #1 at ¶¶ 17.2–17.3, 19.2–19.3. These allegations would be insufficient on their own. However, when they are read in the context of the complaint, NW Monitoring's additional allegations support inferences sufficient to adequately state a claim.

One can infer that Parkinson Defendants conspired, with at least Hollander, to tortiously interfere with NW Monitoring's Existing Customers and Business Expectancies. Again, the timing of Hollander's agreement to work with 4319 Consulting and events giving rise to NW Monitoring's tortious interference claim support the inference that the matters were discussed as Parkinson Defendants and Hollander negotiated Hollander's employment for 4319 Consulting. When the events of the tortious interference then occurred, the Court reasonably infers that Parkinson Defendants and Hollander jointly agreed to pursue the course of conduct. Of course, the evidence may ultimately demonstrate otherwise, but NW Monitoring's claims are sufficiently stated and are not dismissed.

**F. Breach of Loyalty Claims (Counts 15 and 16)**

With regard to NW Monitoring's claims that Parkinson Defendants violated duties of loyalty owed by Wolfe and Hollander, the Court finds the allegations overly speculative. NW Monitoring asserts that Parkinson Defendants and Wolfe "directly or indirectly aided, assisted, abetted, advised, encouraged, or counseled Hollander in breaching her duty of loyalty." Dkt. #1 at ¶ 20.6. Whatever is made of NW Monitoring's allegations, they do not establish a clear theory

upon which Parkinson Defendants can be held liable for Wolfe's and Hollander's alleged breaches of their duties of loyalty to NW Monitoring.  Conversely, Parkinson Defendants cite to authority indicating that a claim for "aiding and abetting" a breach of a fiduciary duty must be set forth separately from the underlying claim related to the breach.  See Dkt. #13 at 20 (citing *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, Case No. 08-md-1919-MJP, 2010 WL 1734848, at *8 (W.D. Wash. Apr. 28, 2010) ("Plaintiffs have not pleaded a separate claim for aiding and abetting [a breach of fiduciary duties]. This alone is fatal.")).  In the same manner, NW Monitoring does not establish that Wolfe may be held liable for Hollander's alleged breach of her duty of loyalty.  Accordingly, the Court dismisses these claims as to Parkinson Defendants and, as to Wolfe, dismisses NW Monitoring's claims based on a breach of Hollander's duty of loyalty.

### G. Breach of Contract Claims (Counts 17 and 18)

No party has sought dismissal of Counts 17 and 18, related to Wolfe and Hollander breaching their individual employment contracts, as Parkinson Defendants are not included in those claims.

### H. Leave to Amend

In closing, NW Monitoring requests that "[i]f Defendants' motions are not denied in their entirety, Plaintiff requests that it be granted leave to amend."  Dkt. #19 at 32.  Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  The Court finds on the whole that NW Monitoring may be able to remedy many of the deficiencies identified in this Order and accordingly grants NW Monitoring leave to amend its complaint.

The sole exception is NW Monitoring's RICO claims.  As to those claims, the Court concludes that NW Monitoring has abandoned the claims by failing to respond to the motions to dismiss.  The lack of argument as to the sufficiency of those claims leaves the Court without a basis upon which to consider the feasibility of further amendments.  The RICO claims are dismissed with prejudice.

## IV.    CONCLUSION

Accordingly, and having reviewed the motions to dismiss, the briefing submitted, and the remainder of the record, the Court finds and ORDERS:

1. Defendants Jeffery Parkinson, 4319 Consulting, Inc., and Marital Community of Jeffery Parkinson's Motion to Dismiss Complaint (Dkt. #13) is GRANTED in part and DENIED in part, consistent with this Order and as set forth below.

2. Defendant Hollander's Motion for Partial Dismissal of Plaintiff's Complaint & to Join Defendants 4319 Consulting's and Parkinson's Motion to Dismiss (Dkt. #16) is GRANTED in part and DENIED in part, consistent with this Order and as set forth below.

3. Defendant Wolfe's Joinder in Defendants Jeffery Parkinson, 4319 Consulting Inc., and Marital Community of Jeffery Parkinson's Motion to Dismiss Complaint (Dkt. #17), to the extent necessary, is GRANTED.

4. Defendant Wolfe's Joinder in Defendant Hollander's Motion for Partial Dismissal of Plaintiff's Complaint (Dkt. #18), to the extent necessary, is GRANTED.

5. As set forth in this Order, the following claims are DISMISSED:

   Counts 2, 3, 4, 5, and 6 are DISMISSED without prejudice as to all defendants.

   Counts 7 and 8 are DISMISSED with prejudice.

   Count 10 is DISMISSED without prejudice.

ORDER – 20

Count 15 is DISMISSED without prejudice as to Defendant Charlene Wolfe, Defendant 4319 Consulting, Inc., and Defendant Jeffery D. Parkinson.

Count 16 is DISMISSED without prejudice as to Defendant 4319 Consulting, Inc., and Defendant Jeffery D. Parkinson.

6. Plaintiff NW Monitoring LLC is GRANTED leave to amend its complaint no later than **(21) days** from the date of this Order.

Dated this 15th day of April, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 21